Grace **DUNBAR** and Betty Little

v.

Caspar **WEINBERGER** et al.

Civ. A. No. 74–862–F.

United States District Court, D. Massachusetts.

Aug. 7, 1974.

William A. Breitbart, Western Mass. Legal Service, Springfield, Mass., for plaintiffs.

Asst. U. S. Atty., William Brown, for U. S. A.

Danielle deBenedictis, Asst. Atty. Gen., Boston, Mass., for Goldmark and Minter.

## OPINION

FREEDMAN, District Judge.

This is an action in which plaintiffs seek to have the Court declare invalid a federal regulation promulgated by the Department of Health, Education and Welfare (45 C.F.R. § 233.20(a)(3)(11)) and a comparable state regulation promulgated by the Massachusetts Department of Public Welfare (Massachusetts State Letter 242H). The regulations allegedly operate to deny those recipients of Aid to Families with Dependent Children (AFDC) (Title IV–A of the Social Security Act, 42 U.S.C. § 602) who are participants in the "Public Service Employment" (PSE) component of the Work Incentive Program (WIN) (42 U.S.C. § 602(a)(19) et seq. and § 630 et seq.), a complete disregard (for AFDC purposes) allegedly required by 42 U.S.C. § 602(a)(19)(D), of income derived from participation in the PSE program. The named plaintiffs purport to represent a class consisting of all others similarly situated. It is alleged by plaintiffs that the regulations are in contravention of 42 U.S.C. § 602(a)(19)(D) as well as violative of the Equal Protection Clause, Due Process Clause, and, in the case of the state regulation, the Supremacy Clause of the United States Constitution. They seek from the Court on behalf of themselves and the class they purport to represent, a determination to that effect and a declaration that said regulations are therefore invalid. They also seek injunctive relief enjoining defendants from enforcing the regulations and an order directing the defendants to promulgate regulations providing that income derived from PSE participation shall be disregarded in determining the needs of AFDC recipients. Plaintiffs ask for costs and payment of all monies wrongfully withheld. The convening of a three-judge district court, pursuant to 28 U.S.C. §§ 2281 and 2284, has also been

requested by plaintiffs. The matter is currently before the Court on plaintiffs' motion for summary judgment.

### Three-Judge Panel

A three-judge court was designated by order of the Chief Judge of the United States Court of Appeals for the First Circuit dated March 20, 1974. By order of this Court dated May 7, 1974, it was determined that the single judge should first decide the statutory claims. [See *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577, 42 U.S.L.W. 4381 (1974).] A ruling adverse to the plaintiffs on those claims would result in the convening of the three-judge court to determine the constitutional claims. A ruling favorable to the plaintiffs on those claims would preclude the necessity of a three-judge court as the substantial constitutional questions would not be reached. In light of the determination which follows, it is the latter result which obtains in this case.

### Class Action

In addition to themselves and their minor children, the named plaintiffs seek to represent a class consisting of all others in Massachusetts who are employed under the Public Service Employment component of the Work Incentive Program. It is alleged that all the prerequisites necessary to maintain a Rule 23(b)(2) class action are present. By separate order of this date, the Court has certified the requested class. [See discussion on "Class Action" in *Rivet v. Minter*, (Civil Action No. 74–636–F, August 1, 1974) a similar case decided recently by this Court.]

### Facts

The following facts have been stipulated to:

1. AFDC is a public assistance program established pursuant to Title IV of the Social Security Act, 42 U.S.C. § 601 et seq. Massachusetts' participation in the AFDC program is authorized by M.G.L., Chapters 18 and 118. In order to receive federal matching funds, the Commonwealth must operate a state plan which conforms to the Social Security Act, 42 U.S.C. § 601 et seq. and other applicable provisions of federal law. The federal AFDC program provides financial aid and services to children and specified caretaker relatives in circumstances where the children are in financial need and have been deprived of the care and support of one or both parents. Children who meet the eligibility criteria set forth in 42 U.S.C. §§ 602(a) and 606 must receive financial aid as a matter of statutory entitlement. Individuals eligible for AFDC are automatically eligible for medical assistance (Medicaid) coverage.

2. The 1967 amendment to the Social Security Act, Public Law 90–248, required those states wishing to participate in the AFDC program to have a WIN program which is a federal training and employment program for AFDC recipients administered by the Secretary of Health, Education and Welfare and the Secretary of Labor. The program had to include three placement components: (1) regular employment or on-the-job training in the regular economy; (2) institutional and work experience training; and (3) "special work projects" for those individuals for whom a job in the regular economy could not be found. 42 U.S.C. § 632.

3. Public Law 90–248 provided various financial work incentives in each of the three components to encourage AFDC recipients to find and keep training or employment.

4. In 1971, Congress amended the Social Security Act and changed the structure of WIN through P.L. 92–223. Section 3 of P.L. 92–223, *inter alia*, amended the third component from "special work projects" to "public service employment" and altered the method of financing said component. The first and second components remained the same.

5. Congress also specifically provided both in 1967 and 1971 that AFDC assistance "will not be denied . . . by

reason of an individual's participation on a project under the program established by section 632(b) . . . (3)." 42 U.S.C. § 602(a)(19)(B).

6. Public Law 92–223 left unchanged 42 U.S.C. § 602(a)(19)(D) which section provides, in part, that "income derived from a special work project under the program established by section 632(b)(3) of this title shall be disregarded in determining the needs of an individual . ." in determining eligibility for and the amount of AFDC.

7. On or about June 20, 1972, HEW, in response to P.L. 92–223, amended its WIN regulations, to be effective July 1, 1972.

8. Said HEW regulations provide at 45 C.F.R. § 233.20(a)(3)(iv), (a)(11)(iv) and (v) that all income (less only work related expenses) derived from an individual's participation in the public service employment component is to be considered available in determining financial eligibility and the amount, if any, of AFDC assistance.

9. On September 1, 1972, the Massachusetts Department of Public Welfare promulgated Massachusetts State Letter 242H, which contained the Commonwealth's revised WIN regulations in response to P.L. 92–223. Said Massachusetts State Letter 242H provides in accord with 45 C.F.R. § 233.20(a)(3)(iv), (a)(11)(iv) and (v), that all income derived from an individual's participation in the public service employment component is to be considered available in determining the individual's financial eligibility and the amount, if any, of his AFDC assistance grant.

10. Every AFDC applicant and recipient must, as a condition of eligibility for aid under the Commonwealth's AFDC plan, register for WIN unless exempt under 42 U.S.C. § 602(a)(19), 45 C.F.R. § 233.11(a) and Massachusetts State Letter 242H, page 2. The amount of AFDC of mandatory WIN participants can be reduced should they fail to participate in WIN without good cause. 42 U.S.C. § 602(a)(19)(F).

11. Individuals participating in the first WIN component, namely, regular employment or on-the-job training in the regular economy, are entitled to a disregard of the first $30 and ⅓ of the remainder of their total earned income per month for the purpose of determining their need for and the amount, if any, of their AFDC assistance. 42 U.S.C. § 602(a)(7) and (8); Massachusetts State Letter 242H, page 4; 45 C.F.R. § 233.-20(a)(3)(iv), (a)(11)(iv) and (v)(a).

12. Similarly, individual AFDC recipients in non-WIN regular employment are likewise entitled to a disregard of the first $30 plus ⅓ of the remainder of their total earned income per month for the purpose of determining their need for and the amount, if any, of their AFDC assistance. 42 U.S.C. § 602(a)(7) and § 602(a)(8).

13. Individuals participating in the second WIN component, namely, institutional training, receive a $30 per month incentive payment, which amount is totally disregarded in determining the amount of a participant's AFDC grant. 42 U.S.C. §§ 602(a)(19)(D), 632(b)(2), and 634; 45 C.F.R. § 233.20(a)(3)(iv), (a)(11)(iv) and (v)(b).

14. Under 45 C.F.R. § 233.20(a)(3)(iv), (a)(11)(iv) and (v)(c), and Massachusetts State Letter 242H, pages 4 and 5, PSE participants are neither granted a full disregard nor the $30 and ⅓ disregard of their PSE remuneration.

15. Plaintiff Grace Dunbar resides at 115 Marble Street, Springfield, with her one minor child, aged thirteen.

16. Plaintiff Dunbar, in order to receive AFDC, was required to participate in the WIN program. On or about February 1, 1974, plaintiff Dunbar began her PSE placement with the Springfield Girls' Club, where her gross remuneration is $2.50 per hour, at forty hours a week.

17. On or about February 5, 1974, plaintiff Dunbar was orally notified by the Springfield Welfare Service Office that the Department intended to terminate her AFDC assistance as a result of

her PSE participation since her total PSE income (less work-related expenses) exceeded her AFDC standard of need. Her termination from AFDC was effective March 1, 1974.

18. Said termination was the result of the application of the provisions of Massachusetts State Letter 242H, which accord with applicable federal regulations relating to the full consideration of PSE remuneration.

19. The Springfield Welfare Service Office also notified plaintiff Dunbar of the Department's intention to terminate plaintiff Dunbar and her minor child, effective March 1, 1974, from medical assistance (Medicaid) as a categorically needy family, which termination was accomplished.

20. Plaintiff Betty Little resides at 269 Chicopee Street, Chicopee, with her minor child, Charles, aged twelve.

21. Plaintiff Little, in order to receive AFDC, was required to participate in the WIN program. On November 1, 1973, plaintiff Little began her PSE placement with the Early Childhood Resource and Training Program, Inc. of Holyoke, where her gross remuneration is $130 per week.

22. Plaintiff Little did not receive her first PSE remuneration until December 24, 1973 and was, accordingly, in receipt of full AFDC assistance until December 31, 1973.

23. On December 18, 1973, plaintiff Little was notified in writing by the Holyoke Welfare Service Office that the Department intended to terminate her AFDC assistance since she was "fully employed under PSE."

24. On January 2, 1974, plaintiff Little met with her caseworker at the Holyoke Welfare Office and was informed that her AFDC assistance was to be terminated on January 15, 1974, pursuant to the provisions of Massachusetts State Letter 242H which accord with applicable federal regulations relating to the full consideration of PSE remuneration. Said termination was accomplished on January 15, 1974, since her total PSE income (less work-related expenses) exceeded her AFDC standard of need.

Oral arguments were heard on plaintiffs' motion for summary judgment on June 10, 1974, and briefs have been filed by plaintiffs and defendant Weinberger. It was represented by counsel that the state defendants are adopting the position of defendant Weinberger (hereinafter referred to as "defendant"). Having carefully considered the oral arguments and carefully studied the supporting briefs, the Court makes the following determinations.

*Summary Judgment*

Plaintiffs have moved for summary judgment pursuant to Rule 56. After review of the stipulation of facts and documents and review of the record in its entirety, the Court finds there is indeed no genuine issue of material fact in dispute and the matter is ripe for adjudication on motion for summary judgment.

As noted in the factual stipulation, paragraph 2, WIN was established in 1967 as part of the Social Security Act amendatory legislation of that year. 42 U.S.C. § 632. The program included three placement components, and different financial incentives were offered to AFDC recipients to encourage participation in the program. Recipients participating in the first component (regular employment or on-the-job training in the regular economy) were (and are today) offered a disregard of the first $30 of monthly gross earned income plus ⅓ of the remainder in determining their "need" for AFDC purposes. Those who participated in the second component (institutional and work experience training) received (and do today) a $30 per month incentive payment which was and is to be totally disregarded in determining "need" under AFDC. Participants in the third component (special work projects) were entitled to supplemental welfare grants to provide them with a total income equal in amount to that of their welfare grant had they not been participating in WIN plus 20% of the partici-

pants' earnings. The Court is presently concerned only with the third component and the incentive offered thereunder.

At the time of its enactment in 1967, section 433(e) of the Social Security Act, 42 U.S.C. § 633(e), authorized the Secretary of Labor to enter into agreements with public agencies, private non-profit organizations established to serve a public purpose, and Indian tribes (with respect to Indians on a reservation), under which individuals deemed suitable would be provided work which would serve a useful public purpose and which would not otherwise be performed by regular employees. The participants in such "Special Work Projects" programs were to be those whom the Secretary had found not suitable for the employment and/or job training programs (Components I and II established by section 432(b)(1), (2) of the Act, 42 U.S.C. § 632(b)(1), (2). The Secretary was authorized to negotiate employment contracts on behalf of the participants, fixing the hours to be worked and the wages to be paid. Section 433(e)(2)(A), (B); 42 U.S.C. § 633(e)(2)(A), (B). The Secretary would also negotiate with the employer the percentage of wages to be paid by the Secretary to the employer on the employee's behalf. The Secretary was largely reimbursed for these expenditures by the states pursuant to a scheme set out below.

With respect to the "Special Work Projects" component there were three relevant "incentive" sections in the Act. It was specifically provided by 42 U.S.C. § 602(a)(19)(B) that AFDC assistance "will not be denied . . . by reason of an individual's participation on a project under the program established by section 632(b) . . . (3)." [See Stipulation 5.] Section 602(a)(19)(D) of 42 U.S.C. provided in part that "income derived from a special work project under the program established by section 632(b)(3) of this title shall be disregarded in determining the needs of an individual . . . ." in determining eligibility for and the amount of AFDC. [See Stipulation 6.] Finally, 42 U.S.C.

§ 602(a)(8)(A)(ii) provided that the $30 plus ⅓ work incentive disregard, applicable to participants in Component I, did not apply to persons participating in a special work project. Despite one's first reaction to reading § 602(a)(19)(D), the statutory scheme did not in fact provide the participant with an employment check plus a full welfare check. Sections 602(a)(19)(E) and 633(e)(3) combined to provide the recipient with a guaranteed income equal to the amount of the AFDC which would be received but for participation in the program, plus 20% of the participant's earnings under the program. The scheme worked as follows: Let us suppose a participant's monthly income from a Special Work Project was $150 and the participant's standard of need for AFDC purposes was determined to be $200. The participant would have been entitled to welfare benefits of $200 had he or she not been enrolled in the program. Twenty percent of the participant's monthly income from the special works project would be $30. Pursuant to § 602(a)(19)(E)(ii), the participant would have been entitled to $230 for participation in the program. The $80-difference between the monthly income and the entitlement would have been paid to the participant by way of a supplemental welfare check from the state in that amount. The state would also be required, pursuant to §§ 602(a)(19)(E)(i) and 633(e)(3), to pay over to the Secretary an amount equal to what the AFDC entitlement would have been but for participation ($200) or 80% of the participant's monthly salary ($120), whichever was less. It is obvious that the scheme contemplated in § 602(a)(19)(D) be read in conjunction with these other sections. The legislative history points out that Congress considered an important element of the program to be the fact that the participant would not receive a welfare check (except a supplementary one, if necessary), but would receive a regular pay check from the employer. This pay check was to be paid "instead" of the regular assistance grant. [See Vol. 2 of U. S. Code Congressional and Admin-

istrative News, 90th Congress, 1st Session, 1967, pp. 2985, 2986.] Plaintiffs do not dispute this interpretation of the 1967 legislation.

In 1971 Senator Talmadge expressed concern over what he termed the failure of the Department of Labor "to meet the promise of the Work Incentive Program of 1967 to lead welfare recipients to useful, productive, independent lives." He was particularly bothered by the fact that by far the greatest portion of WIN funds were spent on the second component—training programs. He first introduced a bill designed to improve the work incentive bill in March of 1971, S.1019. [Cong.Record, Vol. 117, Part 4, 92nd Cong., 1st Sess., pp. 4379, 4380.] The bill would have required, among other things, that more be spent for on-the-job training and public service employment (Special Work Projects); it would have simplified the financing of the third component (to be renamed Public Service Employment) by deleting § 602(a)(19)(E) and increasing the federal share for funding of that component; it would have made registration for participation mandatory with stated exceptions; and it provided an incentive to encourage employer participation. The bill also would have amended § 602(a)(19)(D) by deleting any reference to a disregard of earnings from the third component. Except for the tax incentive, the bill was not passed by the House. It had been added as an amendment to the Revenue Act of 1971 and the House conferees did not feel it was germane to that Act.

Senator Talmadge re-introduced the bill as an amendment to H.R. 10604. It eventually became law as the following history will show. [Cong.Rec., Vol. 117, Part 34, 92nd Cong., 1st Sess., p. 44717.] On December 9, 1971, the House disagreed with the Talmadge Amendment to H.R. 10604 and asked for a conference. On December 14, the Conference Report (92–747) was submitted to both Houses. The House conferees recommended passage of the amendment as altered by the Conference Report. For our purposes, the most important of the alterations was the dropping of the proposed amendment to § 602(a)(19)(D). The refinancing provision remained basically the same, calling for the deletion of § 602(a)(19)(E) and providing for 100% federal funding. [Cong.Rec., Vol. 117, Part 36, 92nd Cong., 2nd Sess., p. 46769.] The joint statement of explanation accompanying the Conference Report did not refer to the recommendation that the Talmadge Amendment changing § 602(a)(19)(D) be stricken from the final amendment. Congressman Mills, speaking in support of the Report, did, however, make the following comment at Cong. Rec., *supra,* p. 46774:

"And I also want to make clear there is nothing in this bill which would affect the earnings disregard provision in present law."

The Report was accepted in both Houses and the bill was signed by the President on December 28, 1971, as P.L. 92–223. The law did not amend § 602(a)(19)(D), § 602(a)(19)(B) [Stip. 5.], or § 602(a)(8)(A)(ii)—but it did delete § 602(a)(19)(E).

At long last, we reach the issue presented to the Court. In response to P.L. 92–223, HEW amended its WIN regulations. 45 C.F.R. §§ 233.-20(a)(3)(iv), (a)(11)(iv) and (v), provide that all income (less work related expenses) derived from an individual's participation in the public service employment component is to be considered available in determining financial eligibility and the amount, if any, of AFDC assistance. [Stip. 8.] The Massachusetts Department of Public Welfare thereafter promulgated a regulation patterned after 45 C.F.R. §§ 233.20(a)(3)(iv), (a)(11)(iv) and (v), Massachusetts State Letter 242H. [Stip. 9.] Plaintiffs allege such regulations are in direct contravention of the will of Congress as expressed by 42 U.S.C. § 602(a)(19)(D) which they allege calls for the total disregard of PSE payments in determining "need" for AFDC eligibility and amount purposes. Defendant Weinberger asserts that the regulation expresses the true intent of Con-

gress and that § 602(a)(19)(D) was left unrepealed because of Congressional neglect. With some reluctance, I accept plaintiffs' view.

As noted by plaintiffs, the language of the Act is clear as it relates to public service employment, AFDC eligibility, and disregards. 42 U.S.C. § 602 (a)(19)(B) states that participation in a public service employment program cannot result in a denial of assistance under AFDC. 42 U.S.C. § 602(a)(19)(D) states that income from participation in a special work project shall be disregarded for AFDC purposes. Finally, 42 U.S.C. § 602(a)(8)(A)(ii) states that the 30 plus ⅓ disregard does not apply to programs in the third WIN component. The result appears to be that the participant receives an employment check for his or her PSE work, that such income is totally disregarded, and that he or she receives a full AFDC payment as well. No doubt this is an attractive "incentive" to encourage participation in the program. Defendant argues, with some merit, that such an interpretation does not seem to be consistent with the concern of Congress in 1971 over the skyrocketing cost of welfare. Nor does such an interpretation comport with the clear intent of Congress expressed in the legislative history of the 1967 amendments to the effect that a most important aspect of the third component was that the participant would no longer receive a check from welfare.

Defendant argues that § 602(a)(19)(D) was related to and was to be read with the other provisions which made up the financial scheme of the program in 1967. We have already referred to the fact that § 602(a)(19)(D) clearly did not have the effect of a double payment prior to 1971. It is defendant's contention that the legislature never intended § 602(a)(19)(D) to have such an effect. There is evidence in the Congressional

Record to support an argument that Congress may have indeed passed the amendments without sufficient consideration. It appears that passage was rushed due to the imminent adjournment of that session of Congress. At the time that the Conference Report was being presented to the House for approval, Mr. Byrnes of Wisconsin, himself a conferee, expressed a great deal of concern that the Conference Committee had not taken enough time to study all the ramifications of the changes made. He suggested that the Conference Committee had acted in a cursory fashion. [Cong.Rec., Vol. 117, Part 36, 92nd Cong., 1st Sess., p. 46776.] Mr. Gross echoed those sentiments by suggesting that the members of the House did not have the faintest idea of what the amendments under consideration proposed to accomplish. [Cong. Rec., *supra*, p. 46772.] Apparently, the House approved the Report on the representations of Mr. Mills and Mr. Ullman, both conferees, that the proposed changes to the third WIN component were essentially the same as those considered and approved in a previous House bill which did not ultimately pass because of Senate opposition. [H.R. 1.] [1]

Defendant also points out that § 602(a)(19)(D) still refers to "special work projects" and not to "public service employment", whereas the amendment clearly changes the designation of the third WIN component to the latter. He argues that this is further evidence of legislative oversight, or at least of a legislative intent that the disregard not be available to PSE participants.

I agree with defendant to the extent that there is some question over whether Congress appreciated or intended the effect § 602(a)(19)(D) now seems to have on AFDC payments to PSE participants. It is clear, however, that the conference, which included Senator Tal-

---

1. It should be noted that the changes proposed by H.R. 1 did include an attractive economic incentive to encourage employment by providing for a sizable income disregard. See H. R.

1, Title 21, Part C, Sec. 2153(b)(4) at Cong. Rec., Vol. 117, Part 16, 92nd Cong., 1st Sess., p. 21450.

madge, specifically rejected the Senator's proposed amendment to § 602(a)(19)(D) and left that section unchanged. This certainly seems to overcome any argument that the section remains unrepealed through Congressional oversight. Nor am I impressed with the argument that because the section refers to special works projects it cannot be said to apply to public service employment. Those terms were used interchangeably several times as they appear in the legislative history by both Congressman Mills and Senator Talmadge, and the section itself does refer to the " . . . program established by section 632(b)(3) . . ." —the section authorizing the PSE program. There is no room for interpretation of § 602(a)(19)(D). It either applies as clearly stated or it does not apply at all. It is not within the province of this Court to say that the section is of no effect. Whether or not the result it creates was anticipated or intended by Congress is a matter of speculation. Plaintiffs quite sensibly point out that to adopt defendant's view would be to emasculate any incentive for participation in PSE. The title of the program, "Work *Incentive*" cuts against such an interpretation. [Emphasis added.] It is true that the interpretation given the statute by HEW is entitled to consideration. "But the sound principle of according deference to administrative practice normally applies only where the relevant statutory language is unclear or susceptible of differing interpretations." *Shea v. Vialpando,* 416 U.S. 251, 262, 94 S.Ct. 1746, 1754, 40 L.Ed.2d 120, 130, 42 U.S.L.W. 4559, 4563, fn. 11 (1974). I have already concluded that the language of § 602(a)(19)(D), read with the statute as a whole, is neither unclear nor susceptible of differing interpretations. This conclusion is supported by "the words of the statute," "manifested by legislative history" and required by "the basic axiom—that courts should construe all legislative enactments to give them some meaning." *Rosado v. Wyman,* 397 U.S. 397, 415, 90 S.Ct. 1207, 1219, 25 L.Ed.2d 442, 457 (1969). If the effect of § 602(a)(19)(D) is an undesirable one, it is within the province of Congress, not the Court, to remedy it.

There was a question of mootness raised at oral argument. I find nothing to indicate that the WIN program is not a viable one. To the extent that the program is unfunded or has been superseded, this opinion will of course have little effect. I find, however, that the issues are properly before the Court for determination.

### Declaratory Judgment

The Court is of the opinion and so declares that:

(1) Insofar as 45 C.F.R. § 233.-20(a)(3)(11) operates to deny plaintiffs herein the full benefit of a total disregard of earnings pursuant to participation in the Public Service Employment component of the Work Incentive Program in determining need for AFDC purposes, and insofar as it operates to deny full medical assistance (Medicaid) benefits to such participants, said regulation is invalid on the grounds that it is in direct contravention of the will of Congress as expressed in 42 U.S.C. § 602(a)(19)(D) and 42 U.S.C. § 602(a)(19)(B).

(2) Insofar as Massachusetts State Letter 242H operates to deny plaintiffs herein the full benefit of a total disregard of earnings pursuant to participation in the Public Service Employment component of the Work Incentive Program in determining need for AFDC purposes, and insofar as it operates to deny full medical assistance (Medicaid) benefits to such participants, said regulation is invalid on the grounds that it is in direct contravention of the will of Congress as expressed in 42 U.S.C. § 602(a)(19)(D) and 42 U.S.C. § 602(a)(19)(B), and therefore violates Article VI of the

United States Constitution (Supremacy Clause).

### Injunctive Relief

To the extent that plaintiffs continue to receive earnings from participation in the Public Service Employment component of the WIN program, defendants are permanently enjoined from failing to disregard entirely such earnings for the purpose of determining plaintiffs' eligibility and need or the need of any other person for public assistance under AFDC.

### Damages

 Insofar as the plaintiffs request the Court to order the state defendants to make retroactive payments of AFDC benefits wrongfully withheld, the relief is denied. See *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662, 42 U.S.L.W. 4419 (1974).

Insofar as similar relief is sought against the federal defendant, the Court will allow the parties to brief and/or propose orders relating to whether, and in what manner, the federal defendant may be ordered to make retroactive payments of benefits wrongfully withheld. The above should be done in consolidation with the like provision in *Rivet v. Minter, supra.*

Plaintiffs' request for costs is allowed. Such costs shall not include attorneys' fees.

## ORDER ON CLASS ACTION STATUS

Pursuant to Federal Rules of Civil Procedure, Rule 23(c)(1), the Court determines and orders that Civil Action No. 74–862–F is properly maintainable as a class action. The Court orders that plaintiffs Dunbar and Little may sue as representative parties on behalf of the following class:

> All those Massachusetts persons who are participants in the Public Service Employment component of the Work Incentive Program, 42 U.S.C. §§ 602(a)(19) et seq. and 630 et seq.

The Court finds that the class is so numerous that joinder of all members is impracticable, that there are questions of law or fact common to the members of each class respectively, that the claims of the representative parties are typical of the claims of the class they represent, and that the representative parties will fairly and adequately protect the interests of the respective classes. In addition, the Court finds that the parties opposing the class have acted or refused to act on grounds generally applicable to the class. That is, they have utilized the challenged regulations in such a manner as to allegedly deny plaintiffs the benefit of a full disregard of earnings from participation in public service employment and medical assistance (Medicaid) benefits which they are allegedly entitled to. I find the class action to be maintainable under Rule 23(b)(2).