Diane DRYSDALE, et al., Plaintiffs,

v.

William HOGAN, Defendant.

No. CA 80–1284–T.

United States District Court,
D. Massachusetts.

July 24, 1981.

T. Richard McIntosh, Legal Services for Cape Cod and Islands, Inc., Hyannis, Mass., Mary C. Gallagher, Mass. Law Reform Institute, Boston, Mass., William Simon, The Legal Services Institute, Jamaica Plain, Mass., for plaintiffs.

Scott A. Smith, Asst. Atty. Gen., Boston, Mass., for defendant.

## OPINION

TAURO, District Judge.

This is a class action challenging several regulations promulgated by the Massachusetts Department of Public Welfare (Department) under the federal-state Aid to Families with Dependent Children (AFDC) program. The central issue is whether federal law requires Massachusetts to apply an earned income disregard to the earnings of caretaker parents whom the state determines not to be in need. The parties have filed cross-motions for summary judgment,[1] and plaintiffs have asked for a preliminary injunction.[2]

## I

The plaintiff class members seek to compel the Commonwealth to apply the income disregard concept when the caretaker parent income is deemed available to the dependent child, regardless of whether or not the parent is needy to the point of being a member of the assistance unit. An analysis of the underlying federal-state statutory scheme is helpful to an understanding of the plaintiffs' position.

---

1. Plaintiffs have styled their motion a motion for "partial" summary judgment on the ground that the issue of appropriate relief is not before the court at this time.

2. This court has merged consideration of preliminary relief and the merits.

AFDC is a federal-state program of public assistance designed to aid the families of children who have lost the support of one or both parents. *See* 42 U.S.C. §§ 601, 606. Those states that choose to participate in AFDC must submit plans for administering the program to the Secretary of Health and Human Services, who in turn approves the plan if it complies with the Social Security Act and federal regulations. 42 U.S.C. § 602(b). The federal government then partially reimburses complying states for their AFDC expenditures. 42 U.S.C. § 603.

Of the many directives imposed upon the states by the Act, three are especially relevant here. First, the Act sets out the categories of people whose income the state must take into account in determining the need of an applicant:

the state agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming [AFDC], or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid.

42 U.S.C. § 602(a)(7). Second, the statute provides that an income disregard shall be applied to the earnings of certain individuals:

in making the determination [of need], the State agency shall with respect to any month disregard . . . (ii) in the case of earned income of . . . a relative receiving [AFDC], and any other individual (living in the same home as such relative and child) whose needs are taken into account in making such determination, the first $30 of the total of such earned income for such month plus one-third of the remainder of such income for such month.

42 U.S.C. § 602(a)(8)(A)(ii). Finally, the Act carves out an exception to the income disregard provision:

the State agency shall not disregard any earned income . . . of . . . (D) any of such persons specified in the [the above-mentioned income disregard provision] if with respect to [any] month the income of the persons specified . . . was in excess of their need as determined by the State agency . . . , unless, for any one of the four months preceding such month, the needs of such persons were met by the furnishing of aid under the plan.

42 U.S.C. § 602(a)(8)(D).

The Massachusetts AFDC program attempts to fulfill these federal conditions through the use of an administrative mechanism known as the "assistance unit". When a caretaker parent applies for AFDC benefits on behalf of a child, the Department picks out a group of people whose needs, assets, and income are relevant in determining the child's eligibility and financial need. See 106 C.M.R. § 304.300. This "assistance unit" includes, in addition to the child, the caretaker parent and the caretaker's spouse if the caretaker and the spouse are themselves in need. *See* 106 C.M.R. § 304.310. The size of the assistance unit has a dual significance: it determines the applicant's level of need and it establishes how many people may avail themselves of the earned income disregard.

Next, the Department calculates the unit's need. The need calculation follows a simple formula correlating assistance unit size with a certain need level—individual computations are not made. A unit composed of two individuals, for example, is automatically assigned a need level of $314.20 a month. 106 C.M.R. § 304.400.

The income of the unit members is then computed with an eye toward finding the child's available income. In determining available income, however, the Department is not bound by the "assistance unit" concept. Massachusetts considers the caretaker's income to be available to the child, regardless of whether the caretaker is a member of the unit. 106 C.M.R. § 304.340.[3]

The final step is to compare the need of the assistance unit with its available income. If the need exceeds the available income, then eligibility is established. To determine the amount of the grant, the

---

3. The rationale is that every parent has a legal obligation to support his or her children.

Commonwealth adjusts the available income figure by applying an "earned income disregard" of $30 plus one-third of the remainder of the income of assistance unit members. 106 C.M.R. § 304.280. The Commonwealth then provides an AFDC payment equal to the difference between need and the adjusted income figure.

## II

Eli Glace, one of the named plaintiffs, is nine years old and lives with his father and stepmother. Mr. Glace, his father, works three days a week as a recruiter for a day-care center, earning $85.00 a week in gross wages. For some time, Mr. Glace has been paid AFDC benefits on behalf of Eli.

On October 6, 1980, the Department ordered a reduction in Eli's benefits from $255.80 a month to $107.30 a month. The Department's rationale for the major portion[4] of this reduction was that Mr. Glace is not in need, because his wife's income is sufficient to support him. Because he is not in need, Mr. Glace may not be considered as belonging to the "assistance unit."

As a nonmember of the assistance unit, Mr. Glace was not entitled to have any of his income disregarded in the calculation of Eli's need. Rather, all of his income was considered to be available to Eli. If, on the other hand, Mr. Glace had been in need and, therefore, qualified as a member of the assistance unit, the Commonwealth would have disregarded the first $30 of his income plus one-third of the remainder in calculating the resources available to Eli.

Mr. Glace's application on behalf of Eli led the Department to define an assistance unit of one, namely, Eli himself. Next, the level of Eli's need was established. Then, in determining whether Eli was eligible for assistance the Department considered the available income of his father Mr. Glace, who had a legal obligation to support him. Because Eli's need exceeded Mr. Glace's income, the Department found Eli eligible for AFDC. In the calculation of the grant amount, however, Mr. Glace was not permitted to take advantage of the income disregard, because he was not a member of the assistance unit. Moreover, since the Department considered Mr. Glace's wife's income adequate to fulfill his needs, it considered all of Mr. Glace's $85.00 per week income (minus certain work-related expenses) as available to Eli. The bottom line is that Eli's AFDC grant was reduced dollar-for-dollar by the amount of Mr. Glace's income. Hence, at least in a narrow economic sense, Mr. Glace has no incentive to work.

## III

The question of whether federal law requires application of the earned income disregard divides into two issues: (1) whether caretaker parents who are not themselves in need fall within one of the categories specified in 42 U.S.C. § 602(a)(8)(A)(ii), the general income disregard provision; and (2) if they do fall within that provision, whether they are removed from coverage by 42 U.S.C. § 602(a)(8)(D), the exception provision.[5]

### A. *The Income Disregard Provision*

Section 602(a)(8)(A)(ii) requires a partial disregard of the income of two classes of people: relatives "receiving" AFDC, and other individuals whose needs are taken into account in determining the applicant's need. In arguing their eligibility under the first alternative, plaintiffs urge that the term "receiving" includes the actual obtaining of welfare checks on behalf of the child,

---

**4.** The regulations challenged here resulted in a reduction of $126.10 per month. The propriety of the rest of the total $148.50 reduction is not at issue.

**5.** Apparently, the few decisions rendered so far have adopted plaintiffs' position. *See Kenyon v. Blum*, No. 78–4612 (S.D.N.Y. Mar. 31, 1981); *Percey v. Blum*, No. 79–308 (N.D.N.Y. Mar. 16, 1981); *Cirrana v. D'Elia*, 96 Misc.2d 994, 410 N.Y.S.2d 235 (Sup.Ct.Nassau Cty. 1978), *aff'd*, App.Div., 415 N.Y.S.2d 1014 (2d Dep't 1979). For a general discussion of the statutory language and underlying policies, see Note, *AFDC Work Incentive Anomaly*, 65 *Cornell L.Rev.* 934 (1980).

so that caretaker relatives who serve as a conduit for the money are eligible for the disregard. The Commonwealth reads the statute more narrowly. It contends that "receiving" means "receiving for one's own benefit" and, therefore, only those relatives who are paid AFDC for their own needs are eligible.

There is a striking paucity of authority favoring either theory. But logic and sound policy weigh heavily on the side of the more expansive interpretation. Congress enacted the income disregard as an incentive to get parents to go out and earn money. Representative Mills, then Chairman of the House Ways and Means Committee, stated this objective in blunt terms:

> [W]e are not going to continue to put Federal funds into States for the benefit of parents when they refuse to get out of that house and try to earn something.... We have taken what can be an expensive step because we tell the States that you must disregard certain earnings of these people in determining their needs as an inducement to get them out of their house and to work.

113 *Cong.Rec.* 23053 (1967). Representative Ullman stressed that the incentive was meant to apply to the family as a unit:

> Employed adults will improve the entire quality of life in the welfare household .... Our committee recognized the importance of providing a work incentive to the individual on relief.... The first $30 of earned family income plus one-third of earnings above that amount would be retained by the family before welfare assistance would be reduced.

*Id.* at 23070–71 (1967).

Moreover, the enactment of the income disregard reflected a much broader Congressional concern with the promotion of family self-sufficiency. Senator Long referred to the income disregard as one of

> a series of amendments [designed by the Senate Finance Committee] to carry out its intent of reducing the AFDC rolls and restoring more families to employment and self-reliance.

*Id.* at 32592. The Senate Finance Committee equated the purpose of the income disregard with that of the Work Incentive and Training (WIN) Program, namely, the

> providing [of] greater incentives for appropriate members of families drawing ... (AFDC) payments to obtain employment so that they need no longer be dependent on the welfare rolls.

1967 *U.S.Code Cong. & Ad.News* 2834, 2837 (reprinting S.Rep.No. 744, 90th Cong., 1st Sess. (1967)). The earned income disregard was apparently perceived, as plaintiffs phrase it, as the "carrot" which would work in conjunction with the "stick" of mandatory training and work requirements under the WIN program. *See id.* at 2994–96.

Congress' double-barrelled purpose of shrinking the welfare rolls while protecting the family unit strongly suggests an ancillary intent to apply the income disregard concept to all caretaker parents, regardless of need. It strains credulity to suggest that Congress intended, by use of the word "receiving", to eliminate an entire class of parents from the work incentive provided by the income disregard. An important part of the Congressional purpose here was to have a long-term positive impact on the quality of family life by giving otherwise needy children the example of having working parents. It would make no sense to abandon that goal simply because parents through their own resources were able to meet their own needs, if not their children's.

The structure of the statutory framework further demonstrates this Congressional intent. Section 602(a)(7), the provision governing the states' calculation of the applicant's available income, virtually duplicates the operative language of the income disregard provision. Both sections include "relatives", and both include "other individual[s] (living in the same home as such child and relative)" whose needs the state takes into account. The only real difference is that section 602(a)(7) speaks of "relatives *claiming* AFDC" while the income disregard pro-

vision mentions "relatives *receiving* AFDC."[6] The most plausible inference is that Congress meant the disregard provision to track the income provision, so that the work incentive would reach the very individuals on whom it could have the greatest impact, namely, the people whose income would normally go to support the child.

The similarity between the provisions also points out the essential inconsistency of the Commonwealth's position. The Department understandably maintains that it must take Mr. Glace's income into account under section 602(a)(7). If this is correct, it must be because Mr. Glace is either a relative claiming AFDC or an individual whose needs the Commonwealth takes into account. The Department insists that it does not take Mr. Glace's needs into account, since he is not a member of the assistance unit. Mr. Glace must therefore be a relative claiming aid. In short, the Commonwealth is arguing that Mr. Glace "claims" aid but does not "receive" aid. But if, using the Department's narrow logic, Mr. Glace is not a "recipient" because he does not receive aid for his own needs, it is inconsistent and unfair to call him a "claimant" and ignore the fact that he does not claim aid for his own needs. The statute does not call for such an awkward interpretation—the terms "claims" and "receives" should both be read broadly to include all caretaker parents, regardless of the parent's individual need.[7]

### B. *The Exception to the Income Disregard Provision*

Section 602(a)(8)(D) prohibits application of the income disregard to "any of such persons [i. e. relatives receiving aid, individuals whose needs are taken into account, and certain dependent children] if ... the income of the persons ... was in excess of their need" for a given month. Plaintiffs read the phrase "such persons" to require consideration of the family as a unit. Under plaintiffs' theory, the statute's purpose is to direct the states to determine eligibility for AFDC without considering any income disregard. In other words, if the income of "such persons" (i. e. the applicant's family) exceeds need, then plaintiffs concede that the income disregard should not be factored in so as to bootstrap an applicant into eligibility. Plaintiffs theorize that the exception was intended to ensure that the income disregard was only used to adjust the benefit payment of otherwise eligible applicants, and not to add otherwise ineligible applicants to the welfare rolls. The Department agrees that the exception is a cost-cutting measure, but it contends that the phrase "such persons" may be read to permit individual exclusion of non-needy persons from the disregard.

The statutory language is ambiguous, and either interpretation would seem to serve the goal of limiting welfare expenditures. Similarly, the regulation implementing the statute lends support to both sides.[8] The legislative history cited by the parties, however, seems to favor plaintiffs' interpreta-

---

**6.** This difference is not difficult to explain. The income measurement is made before eligibility is determined, and therefore the applicant is only a claimant at the income measurement stage. The income disregard does not come into play until eligibility has been established. At that stage, the applicant can properly be called a recipient.

**7.** In light of this court's holding that non-needy caretaker parents are relatives "receiving" aid, it is unnecessary to consider plaintiffs' further argument that they are "individuals whose needs are taken into account."

**8.** The federal implementing regulation stresses the income of the family as a unit:

[T]he state agency will not disregard earned income for a month of the persons in a family ... if the total income of such persons for such month exceeds their need as determined without application of any provisions for disregarding.

45 C.F.R. § 233.20(a)(11)(ii)(b)(2). But the same regulation also states that the disregard should apply only to "individuals whose needs are included in the family grant", thus suggesting the exclusion of non-needy caretakers. *Id.*

The Department of Health and Human Services apparently agrees with the Commonwealth's interpretation. *See* Letter to William Hogan from Joseph P. Mirabella, Assistant Regional Commissioner for Family Assistance.

tion. In describing the exception, the Senate Finance Committee stated:

> The bill contains provisions which will prevent increasing the number of persons receiving AFDC as a result of the earnings exemptions. The [earned income disregard] provisions discussed above are to become available for AFDC only with respect to persons whose income was not in excess of their needs as determined by the State agency without the application of this provision itself. That is, only if a family's total income falls below the standard of need will the earnings exemption be available .... In short, the various provisions included in the committee's bill are designed to get people off AFDC rolls, not put them on.

1967 U.S.Code Cong. & Ad.News 2834, 2995–96 (reprinting S.Rep.No. 744, 90th Cong., 1st Sess. (1967)).

It is difficult to ignore this clear statement of legislative intent. The use of the phrase "total family income" belies any notion that Congress meant the disregard exception to apply on an individual rather than a family basis. Moreover, the Commonwealth's expansive reading of the exception would have the same effect as its restrictive reading of the disregard provision—it would severely undermine the general policy of promoting family self-sufficiency. On the facts of this case, for example, the Commonwealth's theory would turn the income disregard into a work incentive for Eli rather than his father. It is hard to believe that even the omnipresent need to limit expenditures would lead Congress to sanction such a bizarre result.[9]

In short, the Commonwealth has not persuaded this court that Congress meant to take two steps forward and one step backward. This court reads section 602(a)(8)(D) to require simply that states measure the applicant's total family income and determine eligibility before applying the income disregard.

Accordingly, this court holds that the Commonwealth must apply the earned income disregard to caretaker parents, regardless of whether those parents are individually in need. Plaintiffs' motion for summary judgment is allowed.

An order will issue.

---

9. Not surprisingly, the legislative history indicates the contrary. See 113 Cong.Rec. 32592 (1967) (remarks of Sen. Long) ("The first series of amendments [including the income disregard] is designed to encourage and make possible the employment of *adults* in AFDC families.") (emphasis added); 1967 U.S.Code Cong. & Ad.News 2834, 2837 (reprinting S.Rep.No. 744, 90th Cong., 1st Sess. (1967) (earned income disregard intended "[f]or the purpose of providing greater incentives for *appropriate members* of families drawing [AFDC] to obtain employment so that they need no longer be dependent on the welfare rolls") (emphasis added).