Carol A. RIEMER et al.

v.

Thomas HOOKER, Director of the New Hampshire Division of Welfare, and the Division of Welfare of the New Hampshire Department of Health and Welfare.

Civ. A. No. 74–311.

United States District Court,
D. New Hampshire.

April 2, 1975.

Barbara Sard, Esq., New Hampshire Legal Assistance, Manchester, N. H., for plaintiffs.

Charles G. Cleaveland, Asst. Atty. Gen. of N. H., Concord, N. H., for defendant.

## OPINION AND ORDER

BOWNES, District Judge.

Plaintiff brings this motion to declare invalid certain portions of Section 2603.-1 of the New Hampshire Public Assistance Manual, as amended, or alternatively, to hold defendant in contempt for failure to act in conformity with the Opinion and Order of this court issued November 5, 1974. In relevant part, that Order required that:

> The assistance grants of each working AFDC recipient will be determined within thirty days hereof in accord with the holding in Shea v. Vialpando and any increase in benefits due to such determination shall be retroactive to November 1, 1974.

In her motion filed February 13, 1975, plaintiff alleged that the defendants failed in several respects to determine AFDC in accordance with Shea v. Vialpando, 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974). A hearing was held on March 10, 1975, at which time the parties agreed to try to resolve among themselves all issues except one: whether or not defendants' regulations regarding child care costs conform with 42 U.S.C. § 602(a)(7) as interpreted by Shea v. Vialpando, *supra*.

Qualification for AFDC grants depends upon whether or not an applicant's net income for AFDC purposes falls below a specified level. In determining net income, each state allows certain deductions. New Hampshire recently promulgated a revised regulation addressed to the allowance of certain deductions. That regulation, Section 2603.1 (Exhibit A to Plaintiff's Memorandum and appended hereto as Exhibit A), provides in part that: "Child care may not be disregarded as a work expense. Child care will, however, continue to be provided as a social service." Defendants also recently published SR 75–20 (Exhibit B to Plaintiff's Motion and appended hereto as Exhibit B), which provides that child care service will be available without cost to former and potential AFDC recipients who either "do not have gross monthly income which exceeds 150% of the State's standard of need," or are "in need of day care to continue employment."

I rule that child care must be considered as a work expense. 42 U.S.C. § 602(a)(7) states that a State shall, "in determining need, take into consideration . . . any expenses reasonably attributable to the earning of" income, as defined by Section 601 *et seq*. The Supreme Court ascribes "normal meaning of the term 'any'." Shea v. Vialpando, *supra* at 260, 94 S.Ct. at 1753. There is nothing in the "normal meaning" of the words "any expenses" to suggest a *per se* exclusion of child care costs. Indeed, the only basis for excluding costs from consideration as expenses is that such are not "reasonably attributable to the earning of" income. The very sense of the word "reasonably" operates against a blanket preordained exclusion. Child care expenses must be dealt with on an individual basis. Emphasis upon individual treatment is consistent with the mandate of Shea v. Vialpando, *supra, viz.*: 42 U.S.C. § 602 income and expenses must be considered on an "individualized basis." (*Id.* at 260, 262, 94 S.Ct. 1746)

My ruling that child care costs shall be considered as a work expense does not, however, prevent the State from paying such expenses itself, thereby eliminating them as an AFDC deduction. Providing the State with this option does not frustrate the purpose of 42 U.S.C. § 602(a)(7), which, as interpreted by Shea v. Vialpando, *supra* at 263, 94 S.Ct. 1746, is in part to do away with state regulations that function as a

"disincentive" to working by failing to consider work expenses in determining eligibility for AFDC aid.

*Shea* considered transportation expenses under a Colorado regulation that had placed an absolute limitation upon their deductibility. As a consequence, those AFDC applicants who spent more than the $30 permitted by the regulation for transportation between home and office were incompletely reimbursed for this expense. In effect, they were subsidizing their employment.

In some instances, the disallowance of transportation expenses in excess of $30 excluded applicants from AFDC grants, because deductions from gross income were insufficient to bring it under the standardized level of the AFDC need requirement.

Finally, the state regulation examined in *Shea* may have also resulted in providing less money to individuals who worked than those who did not.

It is unclear from reading *Shea* whether or not the third possibility befell Mrs. Vialpando, but it is clear that the local regulation compelled her to subsidize her employment and rendered her ineligible for AFDC assistance.

The Court found that these effects were a "disincentive" to working. Accordingly, the question asked of the subject regulation is whether or not it also acts as a disincentive to working. Based on the probabilities, I find that it does not.

None of the possible consequences of the regulation examined in *Shea* can result here. No New Hampshire applicant will have to subsidize his/her employment.[1] The State will either pay the child care costs, or the applicant will be able to deduct them. It should be noted here that it was stated at the hearing that applicants are not required to use State subsidized child care centers.

No New Hampshire applicant will be ineligible for AFDC assistance despite having out-of-pocket expenses that, if considered, would bring the applicant's net income within the range of the AFDC need requirement. Such expenses will now either not be out-of-pocket, because the State pays for them directly, or, if out-of-pocket, be deductible.

The elimination of what would otherwise be out-of-pocket expenses by state subsidization is not unique to this situation. Perhaps analogy can be made with treatment of food stamps. Like the SR 75–20 handling of child care costs, food stamps are subsidized by the state. Like child care subsidization, food stamps are not considered income. 45 C.F.R. § 233.20(4)(ii)(a). Like child care subsidization, food stamps are not deducted in determining net income for purposes of AFDC, because no money is actually expended. It is actual expenditure that the Court referred to when it wrote:

> Such expenses reduce the level of actually available income, and if not deducted from gross income will not produce a corresponding increase in AFDC assistance. (Shea v. Vialpando, *supra* at 264, 94 S.Ct. at 1755)

Finally, no New Hampshire applicant will have less funds available by working than by not. As plaintiff noted at pages 6–7 of her memorandum, this possibility existed so long as child care costs were not deductible. The computations of such a result are, in simplified fashion as follows.

Assume that an applicant having less than $300 monthly qualifies for AFDC assistance. Assume that the State pays for child care costs of applicants whose monthly gross incomes are not more than $450. Assume that an applicant earns $500 monthly and has $201 of child care costs. The State will not pay the child care costs, because the applicant's income is more than $450. Absent the ruling that those costs shall be considered as work expenses, child care costs would have reduced the applicant's

---

1. Throughout her memorandum, plaintiff refers to AFDC applicants as women. This is inappropriate, because AFDC assistance is available to either sex. *Cf.* Weinberger v. Wiesenfeld, —— U.S. ——, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975).

available funds to $299 monthly without allowing any AFDC assistance. This applicant would have had more funds available by not working; a result that cannot obtain if child care costs are deductible. If deductible, the State still would not directly pay child care costs, but the applicant in the hypothetical would qualify for AFDC assistance.

It is plaintiff's argument that, although the State's regulation now ensures that applicants will have more funds available by working than by not, there is a relative disincentive between funds available under the subject regulation and funds available without it. Plaintiff points out that were the State not permitted to pay for child care costs all applicants could deduct these costs and, therefore, more would qualify for AFDC. The obvious attraction of qualifying for AFDC is that one is not merely brought up to the standard of need; one is given a premium. By way of illustration: if the hypothetical level of need were $300, an applicant proving net available funds of $275 would receive substantially more than the $25 needed to restore him/her to the hypothetical level of need. Thus, in plaintiff's hypothetical at pages 4–6 of her memorandum, an applicant whose child care costs were absorbed directly by the State and, therefore, did not qualify for AFDC had funds available in an amount equal to $43 above the level of need requirement. The same applicant who deducted child care costs had funds available in an amount equal to $164 above the level of need requirement. Plaintiff's point is simply that one is more likely to work for $164 than for $43. She is almost certainly correct. Nevertheless, I do not think it correlative of plaintiff's point that the difference is a disincentive within the meaning of *Shea*, so long as both sums exceed the amount one would receive for not working and no out-of-pocket expenditures are made without a corresponding AFDC-related computation.

It is not entirely clear where an incentive is so meager as to be a disincentive. In *Shea* the facts indicated a woman subsidizing her own employment and perhaps even earning less than would have been hers by not working. Clearly a disencentive *per se*. This State imposes no equivalent penalty on the work incentive. It merely creates a less than optimum incentive.

Of course, the State is trying to reduce the amount of money it expends under its AFDC program, but merely trying to reduce such payments is not outlawed or even wrong. Indeed reduction of AFDC coupled with incentive to work may be considered an aim of 42 U.S.C. § 601 et seq. With child care costs considered expenses, SR 75–20 is consistent with that aim and, concomitantly, within the practicability language of 42 U.S.C. § 601.[2]

The Olsen v. Child case referenced by plaintiff is not on point. Olsen v. Child (D.Idaho, Nov. 12, 1970). That case involved AFDC recipients who "no longer received child care services or payment for the expense of child care." *Olsen, supra* at 2. *Olsen* not only dealt with total disregard of child care costs, which is not the case at hand, but also implied that provision for either child care services or direct reimbursement for them would satisfy 42 U.S.C. § 602. It may be presumed that is not an implication plaintiff wants this court to rely on.

▮ I rule, therefore, that child care costs shall be considered as work-related expenses within the meaning of 42 U.S.C. § 602(a)(7), if paid by the applicant; but the State may pay such costs itself, thereby eliminating them as an AFDC deduction. I rule concomitantly that SR 75–20 is not a disincentive within the meaning of *Shea*.

So ordered.

2. While not critical to my ruling, I cannot help wondering whether or not the State's regulation, if indeed a disincentive, is self-curing. The State is concerned with preserving its money. That is its obvious incentive for the subject regulation. If the regulation discourages enough persons from working, then the AFDC role will grow, and the State will have to spend more money than it would without the regulation. If that occurs, the State will likely withdraw the regulation, plaintiff's position will be

APPENDIX

EXHIBIT A

STATE OF NEW HAMPSHIRE          SR 74–210

Inter-Department Communication

Date    November 18, 1974

At (Office)    Division of Welfare

From    OFFICE OF THE DIRECTOR

Subject  Removal of $18-Ceiling on Employment Expense Disregard

To      ALL DISTRICT DIRECTORS

November 1, 1974
Effective Date

Attached are sheets containing a revised P.A. manual section 2603.1, setting forth the new guidelines to be followed concerning the employment expense disregard. (Instructions for related pen-and-ink changes are provided at the end of this memo.) Whereas previously we imposed a flat $18 figure, the U. S. District Court for the District of N. H. on November 5 ordered us to remove the "ceiling" for AFDC recipients and to redetermine by December 5 the employment expense factor of all AFDC cases affected by the order. We are simultaneously instituting this change for Adult-category recipients also, but the December 5 deadline for redeterminations does not apply to them. However, for both AFDC and Adult-category recipients, the change is to be retroactive to November 1, and, as the redeterminations are made, appropriate steps concerning this retroactivity are to be taken by the D.O.'s utilizing Forms 7, 9, and 27. More specific instructions for Forms 7 and 9 are provided below.)

Essentially, the employment expense disregard will remain at $18 *unless* the recipient can prove that his allowable employment-related expenses exceed this figure. The only items that may be taken into account are listed in the attached material. (Child care is not considered an employment expense.) Please note that the claimant is expected to document these expenses if he challenges the $18 figure.

State Office A.P. is receiving check-stuffers returned by all AFDC recipients, as mentioned in SR 74–205. State Office A.P. will forward the names of those people who feel that their employment expenses exceed $18 to the applicable D.O.'s, who will in turn contact the people in order to schedule interviews to resolve the challenges, informing them of the documentation they must bring (see attached material).

*AFDC* cases must be interviewed (and redetermined, if necessary) by December 5 in order to comply with the court order. Overtime, if and as necessary to accomplish this, is authorized.

*Adult-category* cases may be treated as the information comes to light, but not later than normal redetermination time.

*Applicants* (whether AFDC or Adult-category) will be treated according to this new policy from the time that they apply.

*It is imperative that during all initial and redetermination interviews, the case technician remember to verbally inform the applicant/recipient of his right to prove employment expenses in excess of $18.* (When the application/redetermination forms are redesigned, this will be incorporated. However, until such time, such information must be provided verbally to the applicant/recipient.) Whenever it is determined that the allowable employment-related expenses do in fact exceed $18, the information for *AFDC* cases is to be entered by the client on Form 124 Supplement, section 3 (and on the reverse side if more space is needed). For *Adult-category* cases, the information is to be entered by the client on Form 2 in the blank space at the bottom of page 5. If this information is entered on a previously-filled-out form, three additional actions must be performed by the client:

(1) on the top of the front page of the form, he must enter, "Amended (date) (signature)";

(2) where the *new* information is entered, he must add, "Added (date) (signature)"; and

(3) where the form is normally dated, he must enter, "Amended (date) (signature)".

For those cases in which the employment expense disregard(s) will exceed $18, the computations are to be entered on the front of the Monthly Budget Form 9, at the bottom, showing clearly the items and amounts used to arrive at the total entered on line 6 of section III.

If an existing case is being changed, the applicable reason codes to be used on Form 7 will be "033" for the basic increase, and "873" for the additional one-time-only retroactive (special) payment.

Note: Although child care is not considered an employment related disregard, child care will continue to be provided as a service in accordance with existing social services policy.

2602 *Definitions* (continued)

2602.5  *Gross Earned Income* (continued)

    a. *Gross Earned Income—Employed Person*
      Gross earned income for an employee is the total amount of wages, salary, or commissions paid to the employee before payroll deductions.

    b. *Gross Earned Income—Self-Employed*
      Gross earned income from self-employment is the amount of money available to the person after the cost of doing business is deducted from total proceeds. If the operating cost of a business exceeds the proceeds, public assistance funds can-

not be used to meet the deficit, and the recipient should be encouraged to liquidate the business.

2602.6   *Net Earned Income*

Net earned income is the earned income remaining after all earned income disregards and the employment expense disregard have been subtracted from gross earned income.

2603   *Disregarded Income (Disregards)*

Disregarded income is that income which under certain circumstances is not considered. The amounts disregarded and the circumstances under which they are disregarded are itemized below.

2603.1   *Employment Expense Disregard—All Categories*

At least $18 of gross earned income for *each* employed individual aged fourteen (14) and over in the assistance group will be disregarded each month. This is to cover the following expenses, further explained below, that may reasonably be attributed to the earning of income: Social Security taxes, federal withholding taxes, mandatory union dues, mandatory retirement contributions, and transportation to and from work. Should the client be able to prove that such expenses, taken together, exceed $18, then these full expenses shall be disregarded *subject to the reasonable standards set forth below,* and provided reasonable documentation is submitted by the client. If a client changes jobs, he must submit new documentation.

Child care may not be disregarded as a work expense. Child care will, however, continue to be provided as a social service.

If it is alleged that there are other valid expense items which should be considered, the matter is to be referred to the State Office Assistance Payments Unit.

a.   *Social Security (FICA) Taxes*

The only Social Security taxes that may be disregarded are those that are paid on the first $13,200 of one's annual earned income. Further, the rate of payment is limited to 5.85% for people employed by others, and 8.0% for self-employed people. The figures from IRS tables are to be used.

The requirement for reasonable documentation of this item may be deemed to be satisfied if the client submits a signed statement from his employer attesting to the fact that he is employed, and stating

both his gross salary and the frequency of such salary. However, other documentation may be substituted *if* it comprises these factors.

b. *Federal Withholding Taxes*

Federal withholding taxes may only be disregarded to the extent that the disregard equals the amount (as set forth in the IRS tables) that would be withheld for a number of exemptions that corresponds *exactly* to the size of the assistance group (no matter how many exemptions are actually claimed and no matter how much is actually withheld). The documentation requirements for this item are the same as for item a., above.

c. *Mandatory Union Dues*

If a recipient belongs to a union shop (a firm in which union membership is *mandatory* in order to maintain employment), then the *minimum required* union dues may be disregarded.

The requirement for reasonable documentation of this item may be deemed to be satisfied if the client submits a signed statement from his employer attesting to the fact that union membership is mandatory to maintain employment, providing the name and "local" number (or other designation) of the union, and stating both the *minimum* required dues and frequency that such dues must be paid. However, other documentation may be substituted *if* it comprises these factors.

d. *Mandatory Retirement Contributions*

If, as a condition of employment, the client is required to contribute to a retirement fund (as are State employees, for example), then the *minimum* amount that he is *required* to contribute may be disregarded.

The requirement for reasonable documentation of this item may be deemed to be satisfied if the client submits a signed statement from his employer attesting to the fact that retirement contributions by the employee are required as a condition of employment, and stating both the *minimum* amount (not percentage) that the employee *must* contribute along with the frequency of such contributions. However, other documentation may be substituted *if* it comprises these factors.

An additional requirement that must be met if this item is to be disregarded is that the client sign a statement committing repayment to the Division of this item if and when refunded due to *termination* of employment (as opposed to *retirement*).

e. *Transportation to and from Work*

1. *Amount of Disregard for Transportation*

Transportation to and from work (which may be deemed to include any necessary transportation incidental to child care) that is to be disregarded *must be by the least expensive reasonable means available to the client,* and will be computed for the average number of days that the client is normally employed per week (temporary absences of short duration due to illness, etc. will not be deducted from this number) times 4⅓ weeks per month. Such transportation may only be disregarded at the following rates (assuming the client is not otherwise reimbursed):

(a) if by the client's own vehicle, twelve (12) cents per mile (with daily round-trip mileage rounded off to the next higher whole mile if a fraction is involved);

(b) if by riding with and charged by another individual in the latter individual's privately-owned vehicle, as charged *but not to exceed the amount that would be allowed for an individual ual in his own vehicle*; or

(c) if by public transportation (taxi or bus), as normally charged the public.

If the client is reimbursed in *any* manner (passengers, employer, etc.), then the monthly amount of reimbursement must be subtracted from the amount that would otherwise be disregarded.

2. *Documentation of Transportation*

Reasonable documentation (to be submitted by the client) of *all* types of transportation expenses listed above must include the statement signed by the employer (or other suitable proof) attesting to the fact that the client is indeed employed; a statement signed by the client either saying that he does not receive *any* reimbursement (from passengers, employer, etc.), or saying how much reimbursement he *does* receive and from whom; and, if applicable, a statement signed by the provider of the child care attesting to the fact that it is necessary for the client to provide the child's transportation. *Additionally*:

(a) if the client's vehicle is used, he must sign a statement mentioning the number of miles

claimed and saying that such mileage is the shortest necessary to accomplish his work-related transportation needs;

(b) if the client rides with and is charged by another individual in the latter individual's privately-owned vehicle, the client must produce the documentation mentioned in (a), above, along with a statement signed by the provider of the transportation that mentions the amount charged and the frequency of such charge (which will only be allowed to an extent that it does not exceed the amount allowed for an individual in his own vehicle); or

(c) if the client uses public transportation, he must submit a statement signed by the provider of the transportation that identifies the normal amount charged the public and the frequency of such charge.

EXHIBIT B

STATE OF NEW HAMPSHIRE

Inter-Department Communication

Date    1/6/75                SR 75–20

From    OFFICE OF THE DIRECTOR    At (Office)

Division of Welfare

Subject    Provision of Day Care To
Former and Potential AFDC Recipients

To    ALL DISTRICT DIRECTORS    Effective Date

November 1, 1974

Currently, day care services are provided only to:

(1) Persons who are determined by the Assistance Payments Unit to be eligible for AFDC; day care can appropriately be certified if it serves one of the following functions:

(Section 1805.11, SRS Manual)

(a) enables the parent or guardian to participate in employment or training;

(b) serves as a protective function by preventing foster home placement of a child receiving inadequate care and supervision;

(c) provides learning opportunities for mentally retarded children.

and

(2) Persons who are former or potential recipients of AFDC because of the flat grant conversion or because they are participating in special programs contracted by the Division.

Effective November 1, 1974, day care services will be made available to all former and potential AFDC recipients who meet the following eligibility requirements (See Section II):

    (a) Do not have gross monthly income which exceeds 150% of the State's standard of need;

    (b) Are in need of day care to continue employment.

I. *Responsibilities of AP, SRS, and I&R Units*

Implementation of this policy necessitates the cooperation of AP staff, SRS staff, and I&R staff. The responsibilities of the various units are as follows:

ASSISTANCE PAYMENTS

Food Stamp and Assistance Payments case technicians will refer to Intake and Referral all individuals who are found ineligible for financial assistance or whose case is being closed due to excess earned income but who may be eligible for social services. Referral will be made to the I&R Unit via Form 75. The case technician will indicate in the bottom section of Form 75 if the client has been found ineligible or if the case is being closed. It will be sufficient to mark "excess income" on the form. The I&R Unit will handle the situation directly from that point on.

SRS

In certain situations the Service Unit will directly encounter individuals who are not eligible for financial assistance, but are in need of day care to continue their employment. In such cases, the social worker will determine whether or not the individual is eligible to receive day care paid for by the Division. If the person is eligible, the social worker will submit a completed Form 193 to the I&R Unit, thus indicating that the case is certified and the rate has been verified. The I&R Unit will process the DW-13 and establish the necessary control procedures (Section III).

The same procedures will be followed for recertification in these cases as is followed currently when an active service case is receiving paid services (Section 1805.23, SRS Manual).

INTAKE AND REFERRAL

Intake and Referral Units will have the bulk of responsibility for the implementation of this policy. I&R Units will encounter these former and potential recipients in one of two ways:

    (1) by referral from AP;

    (2) directly, when the individual enters the D.O. and it can be determined that the individual meets financial eligibility requirements for social services and is in need of day care to continue employment.

In both cases, the procedures are as follows:

    (1) Determine financial eligibility for services.

(2) Determine if need for day care exists because of employment.

(3) Refer to an outside source if ineligible or need for day care is not employment related.

(4) If the client is eligible and the day care need is employment related, follow procedures for paid services (Section 1805.23, SRS Manual) and also see instructions to Forms 75, 193, and 194.

II. *Financial Eligibility Requirements*

Eligibility for day care services is now extended to former and potential AFDC recipients * who need day care services in order to continue in employment and whose gross monthly income does not exceed 150% of the State's standard of need:

| Assistance Group Size | Standard of Need | Standard of Need for Day Care |
|---|---|---|
| 1 | 226 | 339 |
| 2 | 263 | 395 |
| 3 | 308 | 462 |
| 4 | 346 | 519 |
| 5 | 384 | 576 |
| 6 | 433 | 650 |
| 7 | 473 | 710 |
| 8 | 532 | 798 |
| 9 | 564 | 846 |
| 10 | 612 | 918 |
| 11 | 666 | 999 |
| 12 | 712 | 1068 |
| Over 12 add | 43 | 65 |

* Medical Assistance recipients (Medicaid, Title XIX) are automatically considered to be former and/or potential AFDC recipients. The need for day care must, however, be present.

III. *Guidelines*

Whenever day care services are provided to these former and potential recipients, the following controls will be established:

(1) A Service Recipient Control Card (194) will be completed in every case. In those offices where the Social Service Face Sheet (500–X) is being used, it will also be completed on each of these cases. In those offices not yet using the 500-X, the Service Recipient Control Card will be the only source of data on these cases (unless they are active service cases).

(2) The back of the Service Recipient Control Card will be used to record the person's eligibility. The following information will be recorded on the back of Form 194:

| Asst. Group Size _____ | (A) Day Care Standard of Need $_____ |
| Eligibility | (B) Monthly Gross Income $_____ |
| Deter. Date _____ | (C) A–B $_____ |

(3) Day care services for formers and potentials will be authorized for a period of *90 days only*. The 193 suspense file will be used to schedue redeterminations. (Section 1805.23, SRS Manual).

(4) Whenever possible, such day care services will be paid via the contract method.

(5) The vendor method is used if no contract exists. It may also be used after a *thorough* check has been made by the worker to insure that all slots of contracted day care are filled in a particular agency.

(6) Either the client or the provider may be designated as the recipient of the vendor payment for day care services. However payment to the provider is preferred. The client must submit a receipt for services in order to receive payment.

## INSTRUCTIONS

*SRS Manual*

*Pen and Ink Changes*

Section 1805.(2): Delete "because of the flat grant....Social and Rehabilitative Services." and add "and need day care to continue in employment (see SR 74–13)."

Section 1805.3, The Vendor System Method Payment: Add "and for former and potential AFDC recipient eligible for day care."

| *Remove and Destroy* | *Insert* |
|---|---|
| None | SR 75–20, dated 1/6/75 behind Section 1805 in the SRS Manual |

## DISPOSITION

Please distribute to all AP, SRS, and I&R Staff, as well as to all holders of SRS Manuals. Retain the SR until further notice.

RGL/jmw