**Karen SIMPSON, Diane Brooks, Katie Walker, and Linda McCall, on behalf of themselves, their minor children, and all others similarly situated, Plaintiffs,**

v.

**Jeffrey MILLER, Director, Illinois Department of Public Aid, in his official capacity, and the Illinois Department of Public Aid, a state agency, Defendants.**

No. 81 C 2985.

United States District Court,
N. D. Illinois, E. D.

March 17, 1982.

Aviva Futorian, Debra Raskin, Diane Redleaf, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs.

Ellen P. Brewin, Patrice Suberlak, Sp. Asst. Attys. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MARSHALL, District Judge.

### I

Plaintiffs Karen Simpson, Diane Brooks, Katie Walker and Linda McCall, on behalf of themselves and their children, and also on behalf of the class of all persons similarly situated,[1] seek declaratory and injunctive relief against policies of the Illinois Department of Public Aid (IDPA) which allegedly deprive plaintiffs of benefits to which they are entitled under Title IV–A of the Social Security Act, in violation of 42 U.S.C. § 1983 (1976). This court's jurisdiction rests on 28 U.S.C. § 1331 (West Supp.1981).

### II

Title IV–A of the Social Security Act, 42 U.S.C. §§ 601–13 (1976 & West Supp.1981 & West Supp. Dec. 1981) is generally known as Aid to Families with Dependent Children (AFDC). This program is designed to enable families to survive the hardships of poverty. See 42 U.S.C. § 601 (1976). Under the program, participating states, such as Illinois, calculate a standard of need, and then compare that standard with the amount of income they calculate is available to a family eligible for assistance under the program. The difference is the basis for determining the amount of cash assist-

---

1. The court certified this case as a class action by a memorandum order dated February 16, 1982. 93 F.R.D. 540.

ance the family will receive under the program. See 45 C.F.R. § 230.20(a)(2)–(3) (1981).

Under the formula used for determining the amount of AFDC assistance an eligible family will receive, the calculation of the income earned by the family's members is critical. The higher the family's income, the less assistance it receives. Prior to October 1, 1981, federal law required a state participating in the program to deduct from income or "disregard" all expenses of the family reasonably attributable to the earning of income, such as child care expenses necessitated by a mother's decision to leave her children with a paid child care provider while she goes to work. See 45 C.F.R. § 233.20(a)(7) (1981); see generally 42 U.S.C. § 602(a)(7) (West Supp.1981). Effective October 1, 1981, federal law requires a state to disregard from the income of eligible family members an amount equal to the family's child care expenditures up to a ceiling of $160 per month, or a lesser amount that the Secretary of the United States Department of Health and Human Services (HHS) might prescribe for recipients who work less than full time. See 42 U.S.C. § 602(a)(8)(A)(iii) (West Supp. Dec. 1981). This change was part of the Omnibus Budget Reconciliation Act of 1981, Pub. L.No.97–35, 95 Stat. 357–933 (1981).

Throughout the period relevant to this action, Illinois has not deducted or "disregarded" child care expenses attributable to the earning of income from recipients' income. Instead, it has sought to eliminate those expenses by ensuring that AFDC recipients need not incur child care costs. One device employed by Illinois is to have recipients place their children in day care centers, which receive payment directly from Illinois. Approximately 5,800 recipients have children in centers and do not incur child care costs as a result. Plaintiffs do not challenge Illinois' actions with respect to these recipients, and such recipients are not members of the plaintiff class.

For recipients who do not have their children in day care centers which receive reimbursement in full from IDPA, Illinois seeks to eliminate child care expenses by reimbursing the recipients for their expenses. However, Illinois places four significant limitations on reimbursement.

(1) Illinois places absolute maximums, or caps, on the amounts of child care expense it will reimburse. These caps are significantly less than the $160 per month disregard currently called for by federal law. For example, the current cap for reimbursement in Cook County is approximately $132 per month.

(2) For child care provided either in a recipient's home, in a relative's home, or in a home which has applied for but not yet received a license as a child care provider under Ill.Rev.Stat., ch. 23, § 2214 (1979), Illinois reduces the amounts it will reimburse even further, placing a cap of $94.60 per month on reimbursement.

(3) No reimbursement is provided for costs incurred when child care is received from a provider who is required to be licensed under Ill.Rev.Stat., ch. 23, § 2214 (1979), and who has not sought or been approved for licensing.[2]

(4) No reimbursement is provided for costs incurred when the child care provider resides in the same home as the AFDC recipient.

Plaintiffs estimate, and have submitted material indicating, that of the some 32,000 AFDC recipients that do not leave their children at day care centers where care is fully paid for by IDPA, 70 percent receive no reimbursement at all from the state, although it appears that nearly all incur child care expenses. Even for the 30 percent who receive some reimbursement, there is no assurance that all their child care expenses prior to October 1, 1981, and

---

**2.** Prior to January 1, 1982, Illinois required virtually all day care providers to obtain a license. See Ill.Rev.Stat., ch. 23, § 2212.18 (1979). Effective January 1, 1982, day care providers who care for up to three children for less than 24 hours per day or who receive children only from a single household need not be licensed. P.A. 82–455, § 2.18 (to be codified at Ill.Rev. Stat., ch. 23, § 2212.18).

their expenses up to $160 per month after October 1, 1981, will be reimbursed due to the four limitations placed on reimbursement. As a result, it appears that Illinois does not fully reimburse members of the plaintiff class for their expenses incurred in obtaining day care up to $160 per month currently, and prior to October 1, 1981, did not reimburse these expenses in full. This failure, it is alleged, is violative of rights secured by federal law of the plaintiff class, and therefore justifies injunctive and declaratory relief under 42 U.S.C. § 1983 (1976). Plaintiffs have moved for summary judgment. In considering the motion, the court will construe all genuine issues of fact against plaintiffs.

### III

■ As a participant in the AFDC program, Illinois must obey the provisions of the Social Security Act and the regulations promulgated thereunder. *See King v. Smith*, 392 U.S. 309, 316–17, 88 S.Ct. 2128, 2132–33, 20 L.Ed.2d 1118 (1968); *Nolan v. de Baca*, 603 F.2d 810, 812 (10th Cir. 1979); *Bourgeois v. Stevens*, 532 F.2d 799, 802 (1st Cir. 1976). IDPA, which administers the program for Illinois, may not restrict the scope or coverage of the program in a manner inconsistent with federal law. *Miller v. Youakim*, 440 U.S. 125, 135, 99 S.Ct. 957, 964, 59 L.Ed.2d 194 (1979); *Quern v. Mandley*, 436 U.S. 725, 740, 98 S.Ct. 2068, 2077, 56 L.Ed.2d 658 (1978); *Philbrook v. Glodgett*, 421 U.S. 707, 719, 95 S.Ct. 1893, 1901, 44 L.Ed.2d 525 (1975); *Burns v. Alcala*, 420 U.S. 575, 578, 95 S.Ct. 1180, 1183, 43 L.Ed.2d 469 (1975); *Townsend v. Swank*, 404 U.S. 282, 285–86, 92 S.Ct. 502, 504–05, 30 L.Ed.2d 448 (1971). Therefore, Illinois may not refuse to compensate AFDC recipients for employment related child care expenses

when required to do so by federal law. *See Doe v. Gillman*, 479 F.2d 646, 648 (8th Cir. 1973), *cert. denied*, 417 U.S. 947, 94 S.Ct. 3073, 41 L.Ed.2d 668 (1974) *and* 421 U.S. 920, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975); *Arizona State Department of Public Welfare v. HEW*, 449 F.2d 456, 470–71 (9th Cir. 1971), *cert. denied*, 405 U.S. 919, 92 S.Ct. 945, 30 L.Ed.2d 789 (1972). These principles have been codified in 45 C.F.R. § 233.-10(a)(1)(ii) (1981), which states,

A State may:

(A) Provide more limited public assistance coverage than that provided by the Act only where the Social Security Act or its legislative history authorizes more limited coverage;

(B) Impose conditions upon applicants for and recipients of public assistance which, if not satisfied, result in the denial or termination of public assistance, if such conditions assist the State in the efficient administration of its public assistance programs or further an independent State welfare policy, and are not inconsistent with the provisions and purposes of the Social Security Act.

IDPA does not contend that its refusal to fully reimburse recipients for their day care costs prior to October 1, 1981, and in full up to $160 per month effective October 1, 1981, is explicitly authorized by either the Social Security Act or its legislative history.[3] The conditions imposed by Illinois are clearly designed to either assist the state in the efficient administration of AFDC, or to further an independent state welfare policy and plaintiffs do not contend otherwise. Therefore, this case boils down to the question whether the failure to reimburse is "inconsistent with the provisions and purposes of the Social Security Act."[4] *Id.*

---

**3.** IDPA does argue that Title XX of the Act evinces an "implied legislative intent" to authorize its policies relative to day care providers who are required to, but have not sought licenses under state law. That argument is addressed below.

**4.** IDPA argues that plaintiff Simpson lacks standing because she fell out of the plaintiff class in November 1981. However, Simpson is still a member of the class, since the date for

class determination in this case is April 1, 1980, and Simpson has a live claim for notice relief against IDPA's practices as they affected her between April 1, 1980 and November, 1981. *See Simpson v. Miller*, 93 F.R.D. 540 (N.D. Ill.1982). Moreover, while it is true that *Simpson* no longer has standing to assert a claim for injunctive relief, the pleadings indicate that plaintiffs McCall and Walker do have standing. Since at least one plaintiff has standing, this

## IV

The first issue is the validity of IDPA's policy not to deduct child care expenses from its calculation of income, but rather to reimburse those expenses.

■ Under pre-October 1, 1981 law, the Social Security Act did not explicitly require a specific method by which states were required to deal with child care expenses. The statute merely stated that states "shall, in determining need, take into consideration" these expenses. 42 U.S.C. § 602(a)(7) (West Supp.1981). By reimbursing these expenses, IDPA did exactly that. It is true that the AFDC regulations referred to a "disregard" of these expenses when determining income, see 45 C.F.R. § 233.20(a)(3)(iv)(*a*) & (7)(i) (1981), but if the sums were reimbursed, they could not have legitimately been considered "expenses." There was nothing inconsistent with the Social Security Act by reimbursing these expenses rather than deducting them from income. *Riemer v. Hooker*, 392 F.Supp. 145 (D.N.H.1975), see generally *Engelman v. Amos*, 404 U.S. 23, 92 S.Ct. 181, 30 L.Ed.2d 143 (1971) (per curiam).

■ With respect to post-October 1, 1981 law, the answer is different. In the Omnibus Budget Reconciliation Act, Congress did not merely require states to take child care expenses "into consideration." It specified that states "shall disregard from income" these expenses, up to $160 per month. 42 U.S.C. § 602(a)(8)(A)(iii) (West Supp. Dec. 1981). The directive is mandatory; states are ordered to adopt a particular mechanism for dealing with child care expenses. The legislative history also indicates that Congress intended states to use the specific device of an income disregard for child care expenses. *See* House Conf.Rep. No. 97–208, 97th Cong., 1st Sess. 396, 978–79 (1981), *reprinted in* [1981] U.S.Code Cong. & Ad. News 1340–41 (1981); Sen.Rep.No.97–139, 97th Cong., 1st Sess. 435 (1981), *reprinted in* [1981] U.S.Code Cong. & Ad.News 701 (1981). HHS, the agency charged with administering AFDC for the federal government, has issued regulations containing similar mandatory language, see 47 Fed.Reg. 5677 (1982) (to be codified at 45 C.F.R. § 233.20(a)(11)(i)(B) & (ii)(B)), and has indicated that, as it construes the new law, states are no longer free to pay for the child care expenses of recipients. "States can no longer pay for child care expenses related to employment as a special need. Provision for treatment of these expenses *only as an earned income disregard* is clearly stipulated by the new statutory change. . . ." 47 Fed.Reg. 5664 (1982). *See* Exhibits to Plaintiff's Memorandum in Support of Motion for Summary Judgment, Ex. J. The interpretation of HHS is entitled to great deference from this court. *See Miller v. Youakim*, 440 U.S. 125, 144, 99 S.Ct. 957, 968, 59 L.Ed.2d 194 (1979); *Quern v. Mandley*, 436 U.S. 725, 738, 98 S.Ct. 2068, 2076, 56 L.Ed.2d 658 (1978); *Townsend v. Swank*, 404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L.Ed.2d 448 (1971); *Lewis v. Martin*, 397 U.S. 552, 559, 90 S.Ct. 1282, 1285, 25 L.Ed.2d 561 (1970); *McElrath v. Califano*, 615 F.2d 434, 439 (7th Cir. 1980). When Congress mandates a specific formula for an income disregard, states are not free to use another formula. *X v. McCorkle*, 333 F.Supp. 1109, 1117 (D.N.J.1970) (three-judge court), *aff'd*

---

action may proceed. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 263–64, 97 S.Ct. 555, 562, 50 L.Ed.2d 450 (1977). Finally, even if the named plaintiffs fell out of the class, their claims are not mooted, since they are capable of repetition yet evading review. *See DeBrown v. Trainer*, 598 F.2d 1069 (7th Cir. 1979).

IDPA seems to argue that this action is somehow barred by a consent judgment entered by Judge Flaum of this court in *Williams v. Quern*, 77 C 4218. However, IDPA has never pleaded the judgment, as required by Fed.R.Civ.P. 9(e), nor has it ever explicitly argued that the requirements of either res judicata or collateral estoppel are met in this case. Even had IDPA properly raised this argument, its position is dubious. The class in *Williams* was never certified, and apparently no finding was made that the class in that case was adequately represented. Also, it appears that plaintiffs here were not members of the putative plaintiff class in *Williams*, which consisted solely of persons declared ineligible for AFDC, whereas this case involves AFDC recipients. Since it appears that the *Simpson* plaintiffs were not represented in *Williams*, it is doubtful that their claim can be precluded by *Williams*.

*sub nom. Engelman v. Amos,* 404 U.S. 23, 92 S.Ct. 181, 30 L.Ed.2d 143 (1971) (per curiam). Under current law, Illinois must disregard child care expenses from AFDC recipients' income.[5]

## V

The next issue to be addressed is common to the first two restrictions mentioned in Part II, *supra,* which IDPA places on reimbursement of child care expenses. This is the question whether the caps Illinois places on the amount of expense it will reimburse violate federal law.

■ Prior to October 1, 1981, 42 U.S.C. § 602(a)(7) (West Supp.1981) and the regulations thereunder required states to take into consideration the full amount of work-related expenses incurred by AFDC recipients. Nevertheless, IDPA limited reimbursement to the plaintiff class. There is little doubt that § 602(a)(7) prohibited these limitations. In *Shea v. Vialpando,* 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974), the Supreme Court reviewed the history of the statute, and concluded that it was intended to provide a work incentive, since a failure to consider work related expenses would penalize recipients for working, and undermine the federal policy encouraging recipients to become self-sufficient. *See id.* at 258–65, 94 S.Ct. at 1752–55. The Court then stated that the statute did not permit states to place any limitation save reasonableness upon their consideration of recipients' employment-related expenses.

By its terms, § [6]02(a)(7) requires the consideration of "any" reasonable work expenses in determining eligibility for AFDC assistance. In light of the evolution of the statute and the normal meaning of the term "any", we read this language as a congressional directive that no limitation, apart from that of reasonableness, may be placed upon the recognition of expenses attributable to the earning of income. Accordingly, a fixed work-expense allowance which does not permit deductions for expenses in excess of that standard is directly contrary to the language of the statute. *Id.* at 260, 94 S.Ct. at 1753.

*Shea* compels the conclusion that IDPA's caps must fall. Plaintiffs' employment-related day care expenses must be fully recognized by IDPA. Illinois does not contend that any expenses in excess of the IDPA caps are unreasonable, yet IDPA may not limit recognition of these expenses, apart from the limitation of reasonableness. Even if IDPA did contend that expenses in excess of the caps are unreasonable, the caps must fall, for they are absolute, and do not permit an individual recipient to demonstrate that even though her expenses were in excess of the caps, they were reasonable. To be valid under federal law, a state cap on recognition of expenses must permit an individual to demonstrate that the employment-related expenses she incurred were reasonable, even if in excess of the standardized cap. *See Shea v. Vialpando,* 416 U.S. 251, 264–65, 94 S.Ct. 1746, 1755, 40 L.Ed.2d 120 (1974); *Anderson v. Graham,* 492 F.2d 986, 989–91 (8th Cir. 1973); *Schachter v. Percy,* No. 80–C–223, slip op. at 10–13 (W.D.Wis. Nov. 12, 1980); *Chambly v. Freeman,* 478 F.Supp. 1221, 1224–26 (W.D.Mo.1979), *aff'd mem.,* 624 F.2d 1108 (8th Cir. 1980), *cert. denied,* 450 U.S. 936, 101 S.Ct. 1401, 67 L.Ed.2d 371 (1981); *Fones v. Percy,* No. 78–C–191 (W.D.Wis. Dec. 7, 1978), *aff'd mem.,* 601 F.2d 600 (7th Cir. 1979); *Godfrey v. Stanton,* No. F–75–50, slip op. at 25–26 (N.D.Ind. July 28, 1975); *see also Perez v. Chang,* 438 F.Supp. 238 (D.Haw.1977); *Williford v. Laupheimer,* 311

---

5. IDPA seems to recognize this, for it has recently proposed that it adopt an income disregard system. *See* Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment Exs. G, H. However, at the present time, this is merely a proposal, and Illinois has not conceded that its current system is unlawful, so this issue remains controverted and is not moot.

Our holding on this point does not mean that Illinois may not limit its disregard by the four devices discussed above. That question is addressed below.

F.Supp. 720 (E.D.Pa.1969) (three-judge court).[6]

The answer does not change under post-October 1, 1981 law. The new statutory language, if anything, is clearer than the old. It mandates that states recognize all child care expenses up to $160. Indeed, the statute seems to restrict the freedom of participating states even further than under old law, since states very possibly are no longer free to impose even the limitation of reasonableness, Congress having made its own determination that $160 is the reasonable maximum. In any event, neither the statute nor its legislative history cited above contains any indication that Congress intended to modify the long-settled judicial construction that states may not impose inflexible maximums on the amount of employment-related expenses they will recognize. IDPA has violated federal law by placing a limitation on its recognition of child care expenses inconsistent with the manifest statutory requirement that states recognize recipients' child care expenses up to $160. IDPA's limitations are inconsistent with the $160 statutory figure, and must fall.[7]

## VI

█ The preceding discussion in Part V, *supra*, is applicable to the fourth restriction placed on reimbursement of child care expenses by IDPA, that being its refusal to reimburse when the child care provider resides in the same home as the recipient. There is no way to characterize this policy as anything but a restriction on IDPA's recognition of AFDC recipients' employment-related expenses. As noted above, federal law prohibits any restriction apart from reasonableness to be placed on recognition of these expenses by participating states. IDPA does not contend that expenses incurred when the child care provider resides in the same home as the recipient are per se unreasonable, and even if it did, its policy would still fall because it does not permit individuals to prove that their expenses, although incurred for care provided by a person who resides in the same home as the recipient, are nevertheless reasonable.

## VII

The final question presented by this case is whether IDPA may refuse to recognize child care expenses incurred when care is provided by a provider who is required to be, but has not been licensed under state law.[8]

Plaintiffs concede that IDPA's policy of refusing to recognize expenses incurred

6. As one court put it,

The defendants argue that the issue in this case in light of *Shea* is whether the standardized maximum allowances in each itemized category are reasonable. This Court cannot agree with the defendant's characterization of *Shea*. The import of the holding in *Shea* is that a standard allowance is permissible, but the standardized figure cannot serve as a maximum limitation on the amount of expenses an individual AFDC applicant may be able to show. The defendants are not violating § 602(a)(7) by utilizing standard work expense deduction figures. Rather, defendants are violating the mandates of the statute by not allowing AFDC applicants an opportunity to prove that they have reasonable expenses in excess of the standardized maximums. *Chambly v. Freeman*, 478 F.Supp. 1221, 1225 (W.D.Mo.1979), *aff'd mem.*, 624 F.2d 1108 (8th Cir. 1980), *cert. denied*, 450 U.S. 936, 101 S.Ct. 1401, 67 L.Ed.2d 371 (1981).

7. Again, IDPA seems to recognize the error of its ways, for its proposed reforms eliminate these impermissible ceilings.

IDPA correctly points out that 42 U.S.C. § 602(a)(8)(A)(iii) (West Supp. Dec. 1981) permits the Secretary of HHS to designate an amount of less than $160 for recipients who work less than full time, and that the Secretary has subdelegated this authority to the participating states, *see* 47 Fed.Reg. 5662 (1982). However, it appears that Illinois has not yet set an amount lower than $160, so its argument that its caps may not be inconsistent with current law is pure speculation. When and if Illinois designates an amount of less than $160 for individuals who work part time, its determination presumably can be challenged under 5 U.S.C. § 706(2) (1976) if arbitrary, capricious, or an abuse of discretion.

8. IDPA argues that since none of the named plaintiffs is currently receiving such child care, they lack standing to litigate that issue. However, plaintiffs Simpson and McCall did incur such expenses prior to January 1, 1982, when state law changed so as to exempt their child

when the child care provider is required to be but not licensed by Illinois assists the state in furthering its legitimate welfare interest in the health and safety of its children. However, plaintiffs argue correctly that, if Illinois' attempt to further this legitimate interest is inconsistent with the Social Security Act, it is invalid. *See* Part III, *supra.*

IDPA argues that its policy is consistent with the Act. However, it points to nothing in either the language or the legislative history of AFDC, Title IV–A of the Act, which authorizes explicitly or implicitly IDPA's refusal to recognize these child care expenses. Rather, IDPA points to Title XX of the Act, which both before and after October 1, 1981, required the use of minimum standards for day care centers which receive federal funds pursuant to Title XX of the Act. *See* 42 U.S.C. § 1397d(a)(7) (West Supp. Dec. 1981); 42 U.S.C. § 1397a(a)(9) (1976). This, IDPA argues, constitutes a congressional recognition that states should utilize licensing requirements to protect the health and welfare of their children. However, IDPA's conclusion hardly follows from its premise. The fact that Title XX explicitly incorporates state licensing requirements also tends to show that when Congress intended the receipt of Social Security Act funds to be conditioned upon state licensing requirements, it did so explicitly. The fact that Congress felt it necessary to explicitly authorize the use of state licensing requirements as a precondition to the receipt of federal funds in Title XX implies that Congress thought states

were not free to create this condition in the absence of explicit authorization. Moreover, looking to Title IV–A itself, Congress has time and time again shown that when it wishes the receipt of AFDC funds to be subject to conditions, it instructs the states to condition the receipt of benefits explicitly. *See, e.g.,* 42 U.S.C. § 602(a)(12), (18), (19), (21), (25), (26) (1976 & West Supp.1981 & West Supp. Dec. 1981). If anything, congressional failure to specify that states should deny benefits for a specific reason under the AFDC program is evidence of its intent not to allow states to deny benefits for that reason. *Meyers v. Juras,* 327 F.Supp. 759, 761 (D.Or.) (three-judge court), *aff'd mem.,* 404 U.S. 803, 92 S.Ct. 91, 30 L.Ed.2d 39 (1971). IDPA's reliance on Title XX is misplaced; the evidence of congressional intent to authorize IDPA's policy is inconclusive at best.

■ However, under the test enunciated in Part III, *supra,* IDPA's policy may not be struck down merely because it is not authorized by the Social Security Act. Plaintiffs can only succeed if they demonstrate that IDPA's policy is inconsistent with the provisions and purposes of the Act. But we have concluded that, in two crucial respects, IDPA's policies are inconsistent with basic federal policies underlying the AFDC program. As a result, IDPA's policy with respect to the provision of child care from providers who are required to be but are not licensed by the state must fall.

A

In order to determine what the federal policies are which participating states may

care providers from the licensing requirement. As for this period, plaintiffs have a live claim for notice relief against this policy, as we held in *Simpson v. Miller,* 93 F.R.D. 540, at 545–547 (N.D.Ill.1982), which was not mooted by the change in law. Moreover, the claim for notice relief poses the same legal issues as the claims of absent class members whose children still receive care from providers required to be but are not licensed. These absent members have live claims for injunctive relief. Because Simpson's and McCall's claims for notice relief are factually and legally identical to the claims of absent members in all respects save the type of relief they may obtain, there is no reason to believe they cannot adequately represent these

absent class members and assert the claims for injunctive relief. It would elevate form over substance in the extreme to require plaintiffs to substitute an additional named plaintiff with a live claim for injunctive relief, when that additional plaintiff is already adequately represented. Since members of the plaintiff class have live claims for injunctive relief which are adequately represented by their class representatives, there is neither a constitutional nor prudential reason to prohibit Simpson and McCall from asserting absent class members' claims for injunctive relief. *See generally Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1977).

not undermine, it is necessary to determine what the underlying goals of the AFDC statute are. *Philbrook v. Glodgett*, 421 U.S. 707, 713–14, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). The underlying purpose of the statutory mandate to require states to recognize employment-related child care expenses is clear. Congress intended to provide a work incentive for AFDC recipients, since a failure to recognize these expenses would result in recipients' financial situations being worsened by their decision to go to work, a result Congress wanted to avoid. *See Shea v. Vialpando*, 416 U.S. 251, 259–65, 94 S.Ct. 1746, 1753–55, 40 L.Ed.2d 120 (1974); *Jefferson v. Hackney*, 406 U.S. 535, 539 n. 5, 544, 92 S.Ct. 1724, 1728 n. 5, 1730, 32 L.Ed.2d 285 (1972); *Johnson v. Likins*, 568 F.2d 79, 82, 85 (8th Cir. 1977); *Drysdale v. Hogan*, 518 F.Supp. 707, 710–11 (D.Mass. 1981). Thus, the requirement that states recognize these expenses serves what is perhaps the most fundamental federal policy underlying the AFDC program, encouraging impoverished families to become independent and self-sufficient. *See* 42 U.S.C. § 601 (1976); *Shea*, 416 U.S. at 253, 94 S.Ct. at 1750.

To the extent that Illinois does not recognize the employment related child care expenses incurred by recipients who receive child care services from providers who have not obtained or applied for a license when required to do so by the state, Illinois reduces the work incentive of those recipients. The impact of IDPA's policy on work incentives is dramatic. It appears that approximately 70 percent of the AFDC recipients with earned income receive no recognition of their child care expenses at all, despite the fact that it is logical to assume that most if not all of these recipients incur such expenses.[9] Illinois certainly has a legitimate interest in protecting the welfare of its children by licensing day care providers, but it cannot do so by undermining the federally mandated work incentive. Nevertheless, by limiting its recognition of day care expenses, Illinois is undermining the federal policy, and subverting congressional intent. *See Shea*, 416 U.S. at 263–65, 94 S.Ct. at 1755 (limits on recognition of employment related expenses undermine federally protected work incentives); *see generally Jefferson v. Hackney*, 406 U.S. 535, 544, 92 S.Ct. 1724, 1730, 32 L.Ed.2d 285 (1972); *see also Metcalf v. Trainor*, 472 F.Supp. 576, 588–89 (N.D.Ill.1979); *Dunbar v. Weinberger*, 412 F.Supp. 454, 461–62 (D.Mass.1974). In order to protect work incentives, federal law requires that "no limitation, apart from reasonableness, may be placed on the recognition of expenses attributable to the earning of income," *Shea*, 416 U.S. at 260, 94 S.Ct. at 1753, such as the child care expenses incurred by the plaintiff class. However laudable the goal underlying Illinois' licensing requirement for day care providers, that goal may not be pursued in a manner which undermines the congressionally mandated AFDC work incentive, since the very purpose of the federal statute "is in part to do away with state regulations that function as a 'disincentive' to working . . . ." *Riemer v. Hooker*, 392 F.Supp. 145, 146–47 (D.N.H.1975).[10] Because IDPA's limitation on its recognition of child care expenses undermines the federal policy of encouraging AFDC recipients to work, it is inconsistent with federal law and therefore invalid.[11]

## B

IDPA's policy of refusing to recognize child care expenses incurred when the pro-

---

**9.** Since IDPA keeps no records on the number of recipients whose requests for child care expense reimbursement have been denied, the impact of its policies on work incentives cannot be determined with precision.

**10.** The analysis is equally applicable to pre and post October 1, 1981 law, since both 42 U.S.C. § 602(a)(7) (West Supp.1981) and 42 U.S.C. § 602(a)(8)(A)(iii) (West Supp. Dec. 1981) were intended to operate as work incentives.

**11.** While IDPA does not argue the point, it is true that IDPA could minimize the disincentive created by its policy to some extent if it took steps to inform recipients that they will be reimbursed for the child care costs, and explained the licensing requirement to recipients. Federal law appears to require IDPA to take steps to inform recipients of these facts. *See* 45 C.F.R. § 206.10(a)(2)(i) (1981). However, it appears that IDPA does not have such a pro-

vider is required to be but is not licensed under state law undeniably results in reduced assistance to AFDC families. As a result, eligible children may be deprived of funds which they desperately need in order to survive from day to day. *See Goldberg v. Kelly*, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970). This deprivation is through no fault of the child, for the needy child obviously has no control over whether his or her mother has taken him to a child care provider who is required to be but not licensed by Illinois. The question arises whether or not the deprivation inflicted on otherwise eligible and concededly needy children in Illinois is at odds with the underlying purposes and policies of AFDC.

The paramount purpose of AFDC is to protect dependent children from the hardships of poverty. *See Carleson v. Remillard*, 406 U.S. 598, 603, 92 S.Ct. 1932, 1935, 32 L.Ed.2d 352 (1972); *Lewis v. Martin*, 397 U.S. 552, 559, 90 S.Ct. 1282, 1285, 25 L.Ed.2d 561 (1970); *King v. Smith*, 392 U.S. 309, 325, 88 S.Ct. 2128, 2137, 20 L.Ed.2d 1118 (1968); *Taylor v. Martin*, 330 F.Supp. 85, 88–89 (N.D.Cal.) (three-judge court), *aff'd mem. sub nom., Carleson v. Taylor*, 404 U.S. 980, 92 S.Ct. 446, 30 L.Ed.2d 364 (1971). In *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), the Supreme Court struck down an Alabama regulation which prohibited eligible children from receiving AFDC if their mother "cohabits" in or outside her home with any single or married able-bodied man. The Court began its analysis by noting that Congress, in 42 U.S.C. § 604(b) (1976), has adopted a policy whereby states participating in the AFDC program are prohibited from denying assistance to eligible children on the ground that the home environment in which the children reside is unsuitable. Congress and federal law instead require AFDC assistance to continue to the children while the state attempts to either improve the home conditions, or remove the children from the home. 392 U.S. at 322–24, 88 S.Ct. at 2135–36; *see Miller v. Youakim*, 440 U.S. 125, 138, 99 S.Ct. 957, 965, 59 L.Ed.2d 194 (1979). The Court explained that AFDC is designed to help eligible children and, as a result, states should attempt to improve the conditions in which they live, rather than punish them through the denial of public assistance. 392 U.S. at 325–26, 88 S.Ct. at 2137–38. A participating state may not assert even a valid welfare interest in such a punitive fashion. *Id. See Van Lare v. Hurley*, 421 U.S. 338, 345, 347–48, 95 S.Ct. 1741, 1746, 1747–48, 44 L.Ed.2d 208 (1975); *Arizona State Department of Public Welfare v. HEW*, 449 F.2d 456, 477–78 (9th Cir. 1971), *cert. denied*, 405 U.S. 919, 92 S.Ct. 945, 30 L.Ed.2d 789 (1972). *King v. Smith* and its progeny have erected a fundamental principle of AFDC jurisprudence: that the Social Security Act will not countenance depriving needy children of benefits because of factors beyond their control, and unrelated to their need. *See, e.g., Miller v. Youakim*, 440 U.S. 125, 149, 99 S.Ct. 957, 969, 59 L.Ed.2d 194 (1979); *Van Lare v. Hurley*, 421 U.S. 338, 347–48, 95 S.Ct. 1741, 1747–48, 44 L.Ed.2d 208 (1975); *King v. Smith*, 392 U.S. at 329, 88 S.Ct. at 2139; *Doe v. Ellis*, 350 F.Supp. 375, 379 (D.S.C. 1972) (three-judge court); *Saddler v. Winstead*, 332 F.Supp. 130, 135 (N.D.Miss.1971); *Taylor v. Martin*, 330 F.Supp. 85, 88–89 (N.D.Cal.) (three-judge court), *aff'd sub nom., Carleson v. Taylor*, 404 U.S. 980, 92 S.Ct. 446, 30 L.Ed.2d 364 (1971); *Woods v. Miller*, 318 F.Supp. 510, 513–14 (W.D.Pa. 1970) (three-judge court); *Cooper v. Laupheimer*, 316 F.Supp. 264, 268–69 (E.D.Pa. 1970) (three-judge court). *See also Rush v. Smith*, 573 F.2d 110, 118 (2d Cir. 1978) (footnote omitted) (Under the AFDC statute, "the sin of the mother, even such an egregious one as refusing the very modest cooperation New York City has required with

gram. The only time IDPA instructs its employees to mention the availability of reimbursement is if the recipient first mentions a need for child care, and even then it appears the licensing requirement is not explained. The fact that 70 percent of recipients with earned income fail to receive any reimbursement is testimony to the failure of IDPA to disseminate this information. Even if IDPA did have such a policy, this would only mitigate the effect of the disincentive by informing recipients that they have an option which will eliminate the disincentive. However, Congress manifestly intended recipients to always have the incentive, not merely to be able to opt to have a work incentive.

regard to her own fraud, shall not be visited upon the children.").[12] One court summarized this principle while striking down a Connecticut regulation which disqualified eligible families from AFDC if the mother refused to name her children's father so as to enable the state to proceed against the absent father on grounds of nonsupport.

We do not doubt that the state may have valid interests in establishing paternity and locating absent fathers, and indeed, there may be instances where divulgence of the father's name would be of substantial benefit to the child. However compelling these interests may be, Congress has determined that the primary and inescapable obligation of participating states is to provide financial assistance to "needy" and "dependent" children. The "protection of such children is the paramount goal of AFDC." *Doe v. Shapiro*, 302 F.Supp. 761, 767 (D.Conn. 1969) (three-judge court) (quoting *King v. Smith*, 392 U.S. at 325 [88 S.Ct. at 2137]) (footnote omitted), *appeal dismissed*, 396 U.S. 488, 90 S.Ct. 641, 24 L.Ed.2d 677 (1970).

IDPA's practice is inconsistent with the fundamental federal policy which prohibits states from enforcing their welfare policies by denying needy children aid for which they would otherwise be eligible. "[T]he defendant's policies at issue herein result in affording children different amounts of aid based upon a consideration entirely independent of their need and dependency, thus contravening the fundamental purpose of the AFDC program, i.e., the protection of needy children." *Martinez v. Trainor*, 435 F.Supp. 440, 444 (N.D.Ill.1976), *appeal dismissed*, 556 F.2d 818 (7th Cir. 1977).

This would be a different case if, along the lines suggested by the Supreme Court in *King v. Smith*, Illinois enforced its licensing requirement in a manner consistent with federal law. Illinois may express its legitimate interest in its children's welfare either by continuing public assistance while steps are taken to remove the children in question from an unlawful child care provider, or by proceeding directly against the unlawful provider.[13] But Illinois does neither. IDPA takes the position that it will not proceed directly against the provider, *see* Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment at 12, and it does not continue assist-

**12.** Perhaps the best example of this principle is the long line of cases which hold that state rules disqualifying otherwise eligible children from AFDC if their mother refuses to identify the children's father so that the state can proceed against the father for nonsupport are inconsistent with federal law, because they punish needy children impermissibly, even though the state regulation is pursuant to a legitimate state welfare interest. *See, e.g., Doe v. Flowers*, 364 F.Supp. 953 (N.D.W.Va.1973) (three-judge court), *aff'd mem.*, 416 U.S. 922, 94 S.Ct. 1921, 40 L.Ed.2d 279 (1974); *Story v. Roberts*, 352 F.Supp. 473, 475–76 (M.D.Fla.1972) (three-judge court); *Doe v. Ellis*, 350 F.Supp. 375 (D.S.C.1972) (three-judge court); *Doe v. Lavine*, 347 F.Supp. 357 (S.D.N.Y.1972); *Doe v. Swank*, 332 F.Supp. 61 (N.D.Ill.) (three-judge court) (per curiam), *aff'd mem. sub nom., Weaver v. Doe*, 404 U.S. 987, 92 S.Ct. 537, 30 L.Ed.2d 539 (1971); *Taylor v. Martin*, 330 F.Supp. 85 (N.D.Cal.) (three-judge court), *aff'd mem. sub nom., Carleson v. Taylor*, 404 U.S. 980, 92 S.Ct. 446, 30 L.Ed.2d 364 (1971); *Meyers v. Juras*, 327 F.Supp. 749 (D.Or.) (three-judge court), *aff'd mem.*, 404 U.S. 803, 92 S.Ct. 91, 30 L.Ed.2d 39 (1971); *Woods v. Miller*, 318 F.Supp. 510 (W.D.Pa.1970) (three-judge court);

*Doe v. Shapiro*, 302 F.Supp. 761, 764–68 (D.Conn.1969) (three-judge court), *appeal dismissed*, 396 U.S. 488, 90 S.Ct. 641, 24 L.Ed.2d 677 (1970). The principle that the children should not be harmed by the failure of the mother to identify the nonsupporting father was subsequently codified by Congress in 42 U.S.C. § 602(a)(26)(B) (1976). *See Lascaris v. Shirley*, 420 U.S. 730, 95 S.Ct. 1190, 43 L.Ed.2d 583 (1975) (per curiam), *aff'g Shirley v. Lavine*, 365 F.Supp. 818 (S.D.N.Y.1973) (three-judge court).

**13.** IDPA explains that its failure to proceed directly against the unlicensed child care provider is because the criminal penalty provided for in Ill.Rev.Stat., ch. 23, § 2214 (1979) is unduly draconian. However, IDPA's view on this question evidently is not shared by the Illinois General Assembly, and one would think IDPA would defer to the Assembly's determination as to the appropriate sanction. In any event, the proper course of action for IDPA is not to deprive needy children of benefits, but rather to seek authority to impose a more "appropriate" sanction against unlawful child care providers directly.

ance while efforts are made to remove children from the offending day care provider. Instead, Illinois merely deprives needy children of benefits. The underlying statutory purpose of aiding needy children is undermined when IDPA deprives otherwise eligible children of benefits on a basis unrelated to need. The state may not seek to pursue policies related to the welfare of its children by depriving them of benefits to which they would otherwise be entitled to under the Social Security Act. *See Van Lare v. Hurley*, 421 U.S. 338, 347–48, 95 S.Ct. 1741, 1747–48, 44 L.Ed.2d 208 (1975).[14]

## VIII

Plaintiffs have demonstrated that the restrictions IDPA places on its recognition of employment related child care expenses are inconsistent with pre- and post-October 1, 1981 federal law. As a result, plaintiffs are entitled to relief under 42 U.S.C. § 1983 (1976) and the supremacy clause of the Constitution. Plaintiffs' motion for summary judgment is granted. Plaintiffs are ordered to submit a draft decree on notice to defendants.

---

**14.** *See also Metcalf v. Trainor*, 472 F.Supp. 576, 578 (N.D.Ill.1979) (IDPA policy not to pay welfare benefits covering shelter costs when recipient lives in substandard housing "may have resulted in some AFDC recipients not receiving shelter [allowances] who should have received them.").